308 F.3d 1047
 Danicia ROBB; Lovie Robb, as parents and guardians of Latosha Robb; Latosha Robb, Plaintiffs-Appellants,
v.
BETHEL SCHOOL DISTRICT # 403; Bethel School Board; Jill Jacoby, Superintendent, Defendants-Appellees.
 No. 01-35823.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 13, 2002.
 Filed October 21, 2002.
 
 John S. Stocks, Van Siclen, Stocks & Firkins, Auburn, WA, for the plaintiffs-appellants.
 William A. Coats and Daniel C. Montopoli, Vandeberg Johnson & Gandara, Tacoma, WA, for the defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington; Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-00-05130-FDB.
 Before: HILL,* GOULD, and BERZON, Circuit Judges.
 GOULD, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether a plaintiff who seeks only money damages is required to exhaust administrative remedies before instituting a claim under 42 U.S.C. § 1983 predicated on a violation of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1485. Answering a question that has divided our sister circuits, we hold that when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required. We therefore affirm the district court's dismissal.
 
 
 2
 * Latosha Robb attended school at Elk Plain School of Choice, an elementary school in the Bethel School District in Spanaway, Washington.[1] She has been diagnosed with cerebral palsy. When Ms. Robb was in the fourth grade, her teachers began removing her from the classroom five times a week for extended "peer-tutoring" by junior high school and high school students without the supervision of a certified teacher. The tutoring occurred on the floor of a dim hallway where there was no chair or desk for her to use.
 
 
 3
 Alleging that the School District's practice of removing Ms. Robb from the classroom for peer tutoring sessions violated the IDEA, her parents filed suit under 42 U.S.C. § 1983, on behalf of themselves and their daughter. They asked for money damages to compensate them for "lost educational opportunities" and "emotional distress, humiliation, embarrassment, and psychological injury." The district court dismissed the case for lack of subject matter jurisdiction on the ground that the plaintiffs were barred from pursuing a judicial remedy before they exhausted their administrative remedies under the IDEA. This appeal followed.
 
 II
 
 4
 The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the Act. The principal purpose of the Act is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs ... [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d).
 
 
 5
 To carry out these objectives, the IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. Honig v. Doe, 484 U.S. 305, 311-12, 108 S.Ct. 592, 98 L.Ed.2d 686 (1998). Under this scheme of procedural protections, parents are entitled to (1) examination of all relevant records pertaining to evaluation and educational placement of their child; (2) prior written notice whenever the responsible educational agency proposes, or refuses, to change the child's placement; (3) an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and (4) an opportunity for an "impartial due process hearing" with respect to any such complaints. Id. at 312, 108 S.Ct. 592. If a party is dissatisfied with or aggrieved by the findings and decisions made after the impartial due process hearing, that party may obtain additional administrative review by the state educational agency. 20 U.S.C. § 1415(g).
 
 
 6
 The IDEA requires a plaintiff to exhaust his or her administrative remedies before commencing suit if that person is "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(l). Because money damages are not "available under" the IDEA, Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir.1999), it might seem that a plaintiff can avoid the IDEA's exhaustion requirement merely by limiting the prayer for relief to money damages. But only one circuit court has so held. See W.B. v. Matula, 67 F.3d 484, 496 (3d Cir. 1995). A larger number of circuit courts have taken the opposite approach. See Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 64 (1st Cir.2002) ("[P]laintiffs who bring an IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court."); Covington v. Knox County Sch. Sys., 205 F.3d 912, 916 (6th Cir.2000) ("We disagree that the plaintiff's damages claim alone excuses her from exhausting her administrative remedies."); Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 993 (7th Cir.1996) ("[W]e are unwilling to allow parents to opt out of the IDEA by proclaiming that it does not offer them anything they value."); Padilla v. Sch. Dist. No. 1 in the City and County of Denver, Colo., 233 F.3d 1268, 1274 (10th Cir.2000) (same); N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1379 (11th Cir.1996) ("[I]f the plaintiff's argument is to be accepted, then future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant.").
 
 
 7
 With the First, Sixth, Seventh, Tenth, and Eleventh Circuits, we hold that a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages. We understand "available" relief to mean relief suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers. Charlie F., 98 F.3d at 992; Padilla, 233 F.3d at 1274. Our primary concern in determining whether a plaintiff must use the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy requested. The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem.
 
 
 8
 This case is a good example of why parents should not be permitted to opt out of the IDEA simply by making a demand for money or services the IDEA does not provide.[2] The Robbs seek money to compensate them for "lost educational opportunities" and "emotional distress, humiliation, embarrassment, and psychological injury." Why do they want this money? Presumably at least in part to pay for services (such as counseling and tutoring) that will assist their daughter's recovery of self-esteem and promote her progress in school. Damages could be measured by the cost of these services. Yet the school district may be able (indeed, may be obliged) to provide these services in kind under the IDEA. The IDEA requires a school district to provide not only education but also "related services," including
 
 
 9
 such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services ...) as may be required to assist a child with a disability to benefit from special education.
 
 
 10
 20 U.S.C. § 1401(22). The regulations implementing the statute provide that "psychological services" include "psychological counseling for children and parents." 34 C.F.R. § 300.24(b)(9)(v). This battery of educational, psychological, and counseling services could go a long way to correct past wrongdoing by helping Ms. Robb to heal psychologically and to catch up with her peers academically, if she has not done so already. It would be inappropriate for a federal court to short-circuit the local school district's administrative process based on the possibility that some residue of the harm Ms. Robb allegedly suffered may not be fully remedied by the services Congress specified in the IDEA. We are not ready to say that money is the only balm.
 
 
 11
 The educational professionals and hearing officers who evaluate claims under the IDEA may conclude (a) that adequate remedial services can be provided or (b) that Latosha Robb does not require services. The first outcome would show that relief is available under the IDEA; the second would provide information relevant to Ms. Robb's claims under statutes other than the IDEA. In either event, pursuit of the administrative process would be fruitful, rather than futile.
 
 
 12
 Our holding is strongly supported by the Supreme Court's recent decision in Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), which involved the exhaustion requirement in the Prison Litigation Reform Act (PLRA). The PLRA's exhaustion requirement is framed in language similar to the IDEA's. The PLRA refers to "administrative remedies ... available," 42 U.S.C. § 1997e(a); the IDEA refers to "relief that is also available," 20 U.S.C. § 1415(l). The plaintiff in Booth, a prison inmate who claimed prison guards assaulted him in violation of the Eighth Amendment, argued that exhaustion of administrative remedies would be futile because he sought money damages, which were not available under the state's administrative grievance scheme. 532 U.S. at 734, 121 S.Ct. 1819. In rejecting the plaintiff's argument, a unanimous Court held that "an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 734, 121 S.Ct. 1819 (emphasis added). The Court observed that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." Id. at 739, 121 S.Ct. 1819. Booth strongly suggests that, whatever the statutory context, a plaintiff must exhaust a mandatory administrative process even if the precise form of relief sought is not available in the administrative venue. This makes good sense, because the development of an administrative record (which will assist in the informed disposition of any subsequent litigation) makes resort to administrative procedures anything but "futile."
 
 
 13
 Our allowing the School District a chance to remedy Ms. Robb's injuries in the first instance serves other goals the exhaustion requirement is meant to serve. We have noted that the exhaustion requirement embodies the notion that educational agencies, not the courts, ought to have primary responsibility for the educational programs that Congress has charged them to administer. Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir.1992). The requirement ensures that federal courts, "generalists with no experience in the educational needs of [disabled] students," are given the benefit of expert fact-finding by a state agency devoted to this very purpose. Id. And it promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled students. Id.
 
 
 14
 Despite the apparent benefits of the exhaustion requirement, the Robbs argue that controlling precedent permits them to opt out of the IDEA simply by proclaiming that it does not offer them anything they value. They argue that language in our decision in Witte v. Clark County School District, 197 F.3d 1271 (9th Cir.1999), suggests they can avoid the IDEA's exhaustion requirement simply by limiting their prayer for relief to money damages. The Robbs point to the following language: "Because plaintiff seeks only monetary damages, which is not `relief that is available under' the IDEA, ... exhaustion of administrative remedies is not required." Witte, 197 F.3d at 1275-76. But the Robbs have taken this quotation out of context. The context makes it clear that in Witte we did not rely merely on the fact that the plaintiff had requested money damages. We stressed:
 
 
 15
 Because Plaintiff seeks only monetary damages, which is not "relief that is available under" the IDEA, and because all educational issues already have been resolved to the parties' mutual satisfaction through the IEP process, Plaintiff is not "seeking relief that is also available" under the IDEA, 20 U.S.C. § 1415(l).
 
 
 16
 Id. at 1275 (emphasis added). Before filing suit, the plaintiff in Witte already had agreed with the defendant school district — through informal processes available under the IDEA or through its formal procedures — to new educational plans and services that would address the educational component of his injuries. Witte, 197 F.3d at 1275-76. We stated, in other words, that the "[p]laintiff in fact ha[d] used administrative procedures to secure the remedies that are available under the IDEA." Id. at 1276. Moreover, the plaintiff was seeking only retrospective damages, not damages to be measured by the cost of remedial services (such as those offered under the IDEA). Id. Finally, and perhaps most importantly, the plaintiff's allegations centered around physical abuse and injuries. We wrote, "The remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages." Id. In Witte, neither the genesis nor the manifestations of the abuse were educational.[3] There was no reason to believe the plaintiff's injuries could be redressed to any extent by the IDEA's administrative procedures and remedies. So we permitted the plaintiff to avoid the IDEA's exhaustion requirement. We did not intend to chart a course away from the holdings of our sister circuits.
 
 
 17
 The Robbs are in a very different position from the claimant in Witte. They have not taken full advantage of the IDEA administrative procedures to secure the remedies available thereunder. They do not claim physical injury. And they request money damages to compensate them for psychological and educational injuries the IDEA may remedy.[4] Because their injuries could be redressed to some degree by the IDEA's administrative procedures and remedies, the Robbs' complaint must be dismissed. We agree with our sister circuits that where, as here, a plaintiff has alleged injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies, then the courts should require exhaustion of administrative remedies.
 
 
 18
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable James C. Hill, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation
 
 
 [1]
 Because the district court dismissed the action on the ground that the plaintiffs' complaint failed to allege a basis for federal subject matter jurisdiction, we take the facts pleaded in the complaint as trueSee Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir.1987).
 
 
 [2]
 Because the Robbs are alleging futility or inadequacy of IDEA procedures, they bear the burden of proofDoe v. Ariz. Dept. of Educ., 111 F.3d 678, 681 (9th Cir.1997).
 
 
 [3]
 The plaintiff inWitte — a ten-year-old boy suffering from Tourette's Syndrome — alleged he had been tortured by two teachers because of his illness. He had been: force-fed oatmeal, even though he was allergic to it; strangled so badly he had to be taken to the emergency room; tackled and held to the ground repeatedly; made to run on a treadmill set at high speed with weights strapped to his ankles; deprived of meals; sprayed in the face with water; and forced to stay outside on the patio without food or water. Id. at 1273. Neither the source nor the nature of the plaintiff's alleged injuries was educational. "The foregoing abuses were inflicted on Plaintiff for making noise in the classroom, not running fast enough, not staying on task, not cutting his food, and making involuntary body movements. All these actions are characteristics of Plaintiff's disabilities and occurred because of his disabilities." Id. (emphasis added). By contrast, the peer tutoring program the Robbs challenge here was at least (as plaintiffs' counsel conceded at oral argument) "an attempt at an educational program."
 
 
 [4]
 Our colleague in dissent contends that the Robbs at oral argument segregated their claims for past emotional distress from their other damage claims by waiving the latter. But the Robbs did not attempt to limit their case to this damage claim in the district court. The Robbs have made it clear that the heart of their claim is for educational damages, which are detailed at length in their complaint and other pleadings. In their response to the School District's motion for summary judgment, the Robbs begin their "Mistreatment of Latosha Robb" section by stating, "The lack of education, due to Latosha Robb being placed in the hallway, cannot be resolved or remedied administratively. There is no provision for retroactively stopping something that has already taken place." (emphasis added). In their reply to the School District's response, they argued that placing Latosha Robb in the hallway "is not a special education issue that can be remedied, four (4) years later; instead, this is a loss of regular education issue." (emphasis added). And they argued that modifying Ms. Robb's individual education plan "would have no bearing or affect [sic] on the loss of education in 1997-1998." (emphasis added). This latter pleading never even mentions damages for past emotional distress. Nor did the district court consider the claim for past emotional distress discretely, divorced from its educational context. Rather, the court properly treated all of the Robbs' broad contentions as relating to injuries the source and nature of which were educational. While we can, in our discretion, consider issues of law raised for the first time on appeal, see In re America West Airlines, Inc., 217 F.3d 1161, 1165 (9th Cir.2000), we normally do not do so, and we decline to do so here. See Myers v. Merrill Lynch & Co., Inc., 249 F.3d 1087, 1088 (9th Cir.2001) (declining to consider a claim where the plaintiff on appeal "endeavored to isolate from the rest of the case one narrow claim" and where the "plaintiff did not attempt to segregate such a claim in the district court"). We decline to reframe this appeal to review what would be (in effect) a different case than the one the district court decided below. Further, the plaintiffs did not segregate this issue from its educational context in their opening brief to us (or in their reply brief), a further ground on which we decline to reach the issue as framed by the dissent. See Kim v. Kang, 154 F.3d 996, 1000(9th Cir.1998) ("[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). A party's response to a judge's question at oral argument cannot transform the case into a new one not considered by the district court nor covered by the party's briefing on appeal.
 Our dissenting colleague cites a footnote in Vinson v. Thomas, 288 F.3d 1145, 1148 n. 1 (9th Cir.2001), for the proposition that we must make our decision based on narrowed claims when counsel waives or limits claims at oral argument. Although it is true that we may deem a claim to have been waived at oral argument in some cases, as we did in Vinson, it is not true that we have no discretion in the matter, particularly where, as here, our deeming a claim waived would lead to our effectively reviewing a different case than the one the district court decided. See Myers, 249 F.3d at 1088. It is one thing to permit waiver at argument of a claim that was properly presented in the district court and in the briefing to us. It would be quite a different thing to permit a so-called waiver at argument to transform the case to create new issues not considered in the district court nor addressed in the appellate briefing.
 In addition, even if we were to reach the issue, we would disagree as a factual matter that the Robbs effectively waived their oft-repeated and longstanding claims to damages other than past emotional distress damages. We are not inclined to infer a waiver from oral argument lightly. When plaintiffs' counsel was asked at oral argument, "So your representation now is that the only thing in the case is the retrospective emotional distress damages?," plaintiffs' counsel answered, "That's correct." But at other times at oral argument, plaintiffs' counsel stated that the plaintiffs still were seeking damages for harms other than past emotional distress. Plaintiffs' counsel told us: "Here the plaintiffs' complaint is for the loss of regular education, i.e., when she was supposed to be in regular classrooms she was instead put in the hallway with other disabled or learning disabled students, and ... then tutored by a high school student." Later, plaintiff's counsel said "The word `tutoring' has some element of question here, because we allege she wasn't being taught anything." In their appellate brief, plaintiffs stated, "The appellants' claim here is for the damages caused by this loss of education, including the emotional distress, humiliation, embarrassment, and psychological injuries." (emphasis added). Given all these contradictory statements, even if the issue were properly raised, we would decline to find a waiver that would have the effect of sharply contracting the scope of claims from those presented to the district court. See Goodman v. Lee, 988 F.2d 619, 624 (5th Cir. 1993) (finding that a plaintiff did not waive a damage claim despite her counsel's repeated assertions at oral argument that the plaintiff abandoned that claim when the assertions were "ambiguous and equivocal at best" in the context of the oral argument).
 Moreover, even if the Robbs had succeeded in limiting their damage claim to past emotional distress damages, it would not affect our decision. Where, as here, a plaintiff's injuries are part and parcel of the educational process, we must give the local administrators the first opportunity to remedy them. Charlie F., 98 F.3d at 992; Padilla, 233 F.3d at 1274. Moreover, judges are not child psychology experts, and we will not attempt to draw the uncertain line between that portion of the plaintiffs' emotional injury which is truly "past" — and for which money can provide the only solace — and that portion which may be alleviated by psychological counseling and other IDEA remedies. It is for the education professionals, in the first instance, to make this determination. As we hold above, "Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem."
 
 
 BERZON, Circuit Judge, dissenting:
 
 19
 In my view, the majority decides issues not before us, misreads the IDEA's exhaustion requirement, and fails to properly apply the holding of Witte v. Clark County Sch. Dist., 197 F.3d 1271 (9th Cir.1999), to the case at hand. I therefore respectfully dissent.
 
 
 20
 First, the only issue now properly before this court is whether plaintiffs can pursue their claim for past emotional damages. Plaintiffs initially sought relief for educational as well as emotional damages. Plaintiffs' counsel stated at oral argument, however, that plaintiffs now seek relief only for past emotional damages.[1] In so doing, plaintiffs were not changing their claims; rather they were clarifying what their claims were. It is permissible for counsel to waive or limit their claims at oral argument. When they do, we make our decision based on their narrowed claim, rather than reaching out to decide issues no longer in the case. See Vinson v. Thomas, 288 F.3d 1145, 1148 n. 1 (9th Cir.2001).
 
 
 21
 Of course, plaintiffs will be bound for the rest of this case to pursue only the limited damages relief they have now told us they are seeking. Because that is the case, there is no reason to decide the question to which the bulk of the majority opinion is directed — whether plaintiffs had to exhaust administrative remedies in order to pursue a claim for damages to pay for educational remediation necessitated by the defendant's past conduct.[2]
 
 
 22
 Second, as to the issue that is before us, the majority misapplies the statute. The statutory language of 20 U.S.C. § 1415(l) obligates a plaintiff to exhaust administrative remedies if that person is "seeking relief that is also available under" the IDEA. Id. (emphasis added). So the relief being sought does matter, even if there is other relief available under IDEA that would aid the plaintiffs in some respects.[3]
 
 
 23
 I agree that seeking a certain form of relief (here, money) does not automatically get a plaintiff out from under the exhaustion requirement. The relief available under the IDEA, however, including counseling, is strictly educationally focused. See 20 U.S.C. § 1401(22)("related services" available under the IDEA include "psychological services ... social work services, counseling services ... as may be required to assist a child with a disability to benefit from special education" (emphasis added)); see also Charlie F. v. Bd. of Educ. of Skokie Sch. Dist., 98 F.3d 989, 993 (7th Cir.1996) ("The IDEA offers comprehensive educational solutions."); Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1274 (10th Cir.2000) (plaintiff not required to exhaust administrative remedies where she alleged "severe physical, and completely non-educational, injuries"); Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1063 (10th Cir.2002) ("The IDEA offers redress for claims whose `genesis and manifestation ... are educational.'" (emphasis added) (quoting Charlie F., 98 F.3d at 993)).
 
 
 24
 The assumption that the Robbs are seeking damages for "emotional distress, humiliation, embarrassment, and psychological injury ... to pay for services (such as counseling and tutoring) that will assist their daughter's recovery of self-esteem and promote her progress in school," ante at 1050, is an inaccurate description of plaintiffs' damages request. Plaintiffs have told us only that they want damages for past emotional harm. The emotional harms alleged here may not be measurable only in terms of damage to Latosha's educational well-being. Presumably, she could have been emotionally harmed in ways not connected to education — through humiliation for example, or ostracism by peers.[4]
 
 
 25
 Moreover, damages for emotional distress are not necessarily related to the costs of future therapy, nor are they quantifiable in terms of those costs. When a tort causes emotional distress,
 
 
 26
 the law cannot restore the injured person to his previous position. The sensations caused by harm to the body or by pain or humiliation are not in any way analogous to a pecuniary loss, and a sum of money is not the equivalent of peace of mind. Nevertheless, damages given for pain and humiliation ... give to the injured person some pecuniary return for what he has suffered or is likely to suffer. There is no scale by which the detriment caused by suffering can be measured and hence there can be only a very rough correspondence between the amount awarded as damages and the extent of the suffering.
 
 
 27
 Restatement (Second) of Torts § 903 cmt. a (1979). See also id. at § 905 (compensatory damages that may be awarded without proof of pecuniary loss include compensation for emotional distress); id. at § 905 cmt. i ("there is no rule of certainty with reference to the amount of recovery permitted for any type of emotional distress; the only limit is such an amount as a reasonable person could possibly estimate as fair compensation.") If they were to prevail in their tort action, plaintiffs would have the right to seek damages not only for present and future harms (i.e., a presently damaged self-esteem and the future costs of therapy needed to repair it), but for the pain experienced in the past due to defendants' treatment of Latosha. See id. at § 910("One injured by the tort of another is entitled to recover damages from the other for all harm, past, present, and prospective, legally caused by the tort.")
 
 
 28
 Insofar as the plaintiffs here are seeking relief that is not educationally-oriented (here, compensation for past emotional harms) and is not present- or future-focused, they are not seeking relief available under this statute. As this court and others have made clear, damages to compensate for past pain and suffering do not fit into the model of relief available under the IDEA's administrative remedies. See Witte, 197 F.3d at 1275 ("appropriate relief [under the IDEA] ... is usually construed as a mere grant of jurisdiction to enforce and supplement the administrative procedures for identification, evaluation, and placement of the child, and not of authority to award retrospective damages."); Doe v. Arizona, 111 F.3d 678, 685 (9th Cir.1997) (dismissing suit for failure to exhaust administrative procedures because complainant "seeks a single result: adequate education"); Polera v. Bd. of Educ. of City of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486 (2d Cir.2002) (holding that 42 U.S.C. § 1983-based personal injury damages are not "available" under the IDEA because "[t]he purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy — as contrasted with reimbursement of expenses — is fundamentally inconsistent with this goal.")[5]
 
 
 29
 I stress that under the plain words of the statutory language, the source of the injury, albeit educational, isn't the issue here — the issue is whether the relief plaintiffs seek is available under the procedures delineated by the statute. As the weight of case law makes clear, damages for past emotional distress are not available under the IDEA, and so requiring exhaustion with respect to such damages is to require a futile act. See W.B. v. Matula, 67 F.3d 484, 496 (3d Cir.1995) (where compensatory and punitive damages are sought, "it would be futile, perhaps even impossible, for plaintiffs to exhaust their administrative remedies because the relief sought by plaintiffs in this action was unavailable in IDEA administrative proceedings"); see also Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist., 2002 WL 31246678, at *4, 2002 LEXIS 2099, at *13 (9th Cir.2002) ("`Courts universally recognize that parents need not exhaust the procedures set forth in 20 U.S.C. § 1415 where resort to the administrative process would either be futile or inadequate.'") (quoting Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1302-03 (9th Cir. 1992)).
 
 
 30
 Third, the majority opinion gives unduly short shrift to Witte as controlling law in this case. Witte squarely holds that a plaintiff seeking monetary relief solely for retrospective damages, not measured by future educational costs, is not seeking relief available under the IDEA and therefore is not subject to administrative exhaustion requirements. The injuries in Witte, although they were not educational injuries, resulted from purported educational practices. The various abuses suffered by Witte were undertaken as disciplinary tactics within his educational program. See 197 F.3d at 1273 (describing various punishments visited upon Witte for "misbehavior" caused by his disability). Thus, the horrible actions taken by Witte's tormentors were under the auspices of an educational program and purported to be based on educational considerations, as absurd as that may seem. That the injuries in Witte flowed from physical assaults, as the majority stresses, cannot be dispositive. If, for example, the school in Witte, as a form of discipline, had required Witte to stand in front of his fellow students naked, I presume that the court would have reached the same result.
 
 
 31
 I have serious doubts that the Robbs can state a cognizable cause of action under § 1983 for purely emotional distress damages simply because Latosha was required to do work with student tutors in a hallway for a period of time. But skepticism regarding the viability of the underlying cause of action should not lead us to erode the vitality of Witte's holding by requiring the useless exercise of resort to the school district's administrative procedures, intended for entirely different purposes.
 
 
 32
 Because I disagree with the majority's reading of § 1415(l) and find Witte's holding on retroactive damages controlling in this case, I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 COUNSEL: On this issue of whether this court has authority to strike our complaint and limit it to monetary damages, we waived any claims during summary judgment proceedings, due to the fact that, by the time we reached district court and the summary judgment pleadings were filed, we had gone so far beyond the 4th grade year that there wasn't going to be a remedial extended summer in the 4th grade year. The complaint hadn't even been filed. So I think the court doesn't even have to reach that question —
 THE COURT: I thought you were still looking for damages measured by additional educational costs now, due to what happened in the past.
 COUNSEL: We did when we originally filed the complaint and that was waived, and that's in the record —
 THE COURT: So your representation now is that the only thing in the case is the retrospective emotional distress damages.
 COUNSEL: That's correct, for the 4th grade year and we have evidence that she was put in the hallway in the 5th grade year but that's going to be up for dispute —
 
 
 [2]
 If I had to reach the issue, I would agree that exhaustion is required under the IDEA before a plaintiff can pursue damages relief for future educational costs. I do not agree, however, that a claim for emotional damages requires exhaustion simply because the damages were caused by an educational decision
 
 
 [3]
 The majority's analogy to the Prison Litigation Reform Act (PRLA) construed inBooth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) is inapposite for the same reason: The PRLA provides that a prisoner must exhaust "such administrative remedies as are available" 42 U.S.C. § 1997e(a); see Booth, 121 S.Ct. at 1822, while the IDEA requires exhaustion only if the plaintiff is "seeking" relief available under the statute. The difference is critical: The IDEA is concerned with what relief the plaintiff is seeking, while the PRLA is only concerned with what remedies are available, whether the plaintiff is seeking those remedies or not.
 
 
 [4]
 I do not mean to suggest that injuries of this sort are actionable under § 1983 on the basis of allegations in this case. Rather, my only point is that there is no basis for requiring the Robbs to present these claims for retrospective emotional damages to the IDEA administrative process
 
 
 [5]
 Again, the question of whether plaintiffs have a viable § 1983 cause of action on the merits is not before us. Only the exhaustion issue is, and that is all that I address