**TYLER B., a minor; and Brandy B., his guardian ad litem,**
Plaintiffs,

v.

**SAN ANTONIO ELEMENTARY SCHOOL DISTRICT, et al.,**
**Defendants.**

**No. C–01–20878–JW.**

United States District Court,
N.D. California.
San Jose Division.

Feb. 27, 2003.

Gary Redenbacher, Redenbacher & Brown LLP, Scotts Valley, CA, Linda E. Shostak, Morrison & Foerster LLP, San Francisco, CA, for Tyler B., Brandy B.

Mark A. Cameron, Fenton & Keller, Monterey, CA, for San Antonio Union Elementary School Dist., John Wight, Cathy Hormann, Donna Booker, David Mirko, Mark Swihart, Michael Hardy, Monterey County Office of Education.

D. Richard Barelli, Office of the County Counsel, Monerey, Salinas, CA, for Monterey County.

**ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION AND DECLINING TO ADDRESS MOTION FOR PARTIAL SUMMARY JUDGMENT**

WARE, District Judge.

## I. INTRODUCTION

This is a lawsuit brought by Tyler B., a minor, through a guardian ad litem against the San Antonio Union Elementary School District ("District") and various District officials for violation of the minor's civil rights. The minor is legally blind and suffers from a number of debilitating illnesses. The minor alleges that the District refused to implement an appropriate program to address his special educational and medical needs. He further contends that when his parents complained about this failure to the California Department of Education, the District and District officials retaliated against him in various ways which violated his constitutional rights under 42 U.S.C. § 1983 and other federal and state antidiscrimination laws.

In his complaint, Tyler B. names as Defendants San Antonio Union Elementary School District; John W. Wight; Cathy Hormann; Donna Booker; Mark Swihart; Michael Hardoy; and the Monterey County Office of Education ("Defendants"). Previously, the Defendants moved for partial summary judgment on the ground, among others, that this action was controlled by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400–1485, and that Tyler B. had failed to exhaust the administrative process required by the IDEA before an action may be maintained in a district court. This Court denied the exhaustion portion of motion on the ground that under the facts of this case, Tyler B. did not have to exhaust the IDEA administrative process before maintaining an ac-

tion for damages for retaliation under § 1983. The Defendants requested the Court grant them leave to file a motion for reconsideration, arguing that recent decisions of the Ninth Circuit, properly construed, make the IDEA exhaustion requirement applicable to a § 1983 action by a student seeking damages from a school district under the circumstances of this case. The Defendants again move the Court to grant summary judgment. The Court granted Defendants leave to file the motion for reconsideration and scheduled the motions for hearing for January 13, 2003.

The motions for reconsideration and for partial summary judgment were heard by the Court on January 13, 2003. Attorney Gary Redenbacher appeared on behalf of Plaintiff Tyler B. and attorney Mark Cameron appeared on behalf of Defendants. Based on all papers filed to date, as well as on the oral argument of counsel, and the supplemental record and briefs filed by the parties pursuant to the Court's request, the Court grants the motion for reconsideration and finds that Plaintiff Tyler B.'s claims are based on injuries that can be redressed through the administrative process provided by IDEA and must, therefore, be exhausted prior to adjudication by this Court. The Court finds that Tyler B. did not exhaust the administrative process under IDEA before the case was filed in this Court since he did not complete a due process hearing. Accordingly, the Court dismisses the case without prejudice.

## II. BACKGROUND

The Defendant District is located in South Monterey County. The District consists of one elementary school that houses about 180 students in grades kindergarten to eight. In addition to being legally blind and having other disabilities, the Plaintiff, Tyler B., suffers from acute adrenal insufficiency. This illness causes Tyler B. to suffer episodes of adrenal crisis, which is life-threatening unless he receives an injection of adrenal medication within minutes of an episode.

Tyler B. started kindergarten in the District in 1996. His parents advised District officials of his condition and requested that the District implement an Individualized Education Program ("IEP") for him. After repeated complaints about the failure to adopt an IEP, in May, 1997, an IEP was created for Tyler. However, his parents were dissatisfied with the IEP because in their view, it contained no goals or objectives. Of significance to his parents, the IEP also did not address providing Tyler with health related services in the event of an adrenal crisis episode. Tyler's parents complained to District officials about the lack of goals and objectives and the failure of the IEP to address health related services. According to the parents, their complaint was ignored with a suggestion that the District was not the right place for Tyler.

Believing that the District was failing to properly assess Tyler for special education services, as well as failing to implement services to provide for his disabilities and to accommodate his health condition, Tyler B.'s parents, as well as his grandmother, filed complaints with the California Department of Education ("Department of Education") on October 8, 1997 and on March 26, 1998. The Department of Education undertook two separate investigations and issued reports in February and July of 1998. Both reports found that the District was not in compliance with its duties and obligations.

Tyler B. alleges that, in response to the reports issued by the Department of Education, the District retaliated against him by forbidding all teachers and other District personnel to administer an emergency adrenal injection, should Tyler need one. Fearing for his safety, Tyler B. al-

leges that because the District refused to implement a medical emergency plan for him, on March 26, 1998, his parents removed him from school.

In the ensuing weeks, the District agreed to implement an emergency medical plan. On April 30, 1998, Tyler was returned to school.

After his return, his parents continued to complain to District officials that Tyler was not receiving appropriate special educational services. They complained that in February of 1999, Tyler was excessively punished for talking back to a teacher. His parents contend that this punishment was contrary to a behavioral intervention plan. In the face of what his parents viewed as a continuing refusal to remedy the deficiencies noted in the Department of Education's reports, Tyler B. was removed from the District by his parents and schooled at home for the next three years.

On June 8, 1999, Tyler B. and his parents filed with the Governing Board of the District a "Claim Against Public Entity." The claim sought "an amount that exceeds $10,000 for injury to claimants, namely for violation of claimants' civil rights for refusal to implement an individualized education program and for retaliating against claimants when they asserted their federal and state rights." On July 13, 1999, the Board denied the claim.

On January 13, 2000, Tyler B. filed a complaint in Monterey County Superior Court against the District, the Board and John Wight for violations of the Rehabilitation Act, the ADA, the Unruh Act and 42 U.S.C. § 1983. On September 18, 2001, while the Monterey County action was pending, Tyler B. and his mother, Brandy B., filed a complaint in this Court. Tyler B.'s father, John B., filed a separate feder-al action on the same day. On November 7, 2001, shortly before the Monterey County action was to be tried, Tyler B. voluntarily dismissed the Monterey County action, leaving the two federal actions as his sole claims. On May 8, 2002, the two federal cases were consolidated.

The complaint originally filed in this Court alleged violations of: (1) 42 U.S.C. § 1983; (2) Section 504 of the Rehabilitation Act of 1973; (3) the Americans With Disabilities Act ("ADA"); and, (4) the Unruh Act, California Civil Code §§ 52.1 and 54.3. The Defendants originally named in the federal action were the District; John Wight; Cathy Hormann (a former District teacher); Donna Booker; David Mirko; Mark Swihart; and, Michael Hardoy (past and present members of the Governing Board of the District); the Monterey County Office of Education; and, Monterey County.

All Defendants, with the exception of Monterey County and David Mirko[1], previously moved for summary judgment regarding Plaintiffs' claims on the bases that such claims were filed after the expiration of the applicable statutes of limitations. Defendants also argued that Plaintiffs were required to pursue their administrative remedies under IDEA.

On November 5, 2002, the Court issued an order which granted in part and denied in part Defendants' motion for summary judgment. The order found that only Plaintiff Tyler B. could maintain claims against the Defendants and dismissed both of Tyler B.'s parents as Plaintiffs in this case. The order also found that Tyler B. was not required to exhaust his administrative remedies under IDEA prior to filing his claims for relief pursuant to 42 U.S.C. § 1983, Section 504 of the Rehabili-

---

**1.** Mr. Mirko was never served with the complaint in this action. Therefore, the Court dismisses Mr. Mirko without prejudice pursuant to Fed.R.Civ.Pro. 4(m).

tation Act of 1973, 29 U.S.C. § 794, and the Americans With Disabilities Act, 42 U.S.C. § 12131. In addition, the Court found that equitable tolling applied to Plaintiff's fourth and fifth claims for violations of the Unruh Act.

Following the November 5, 2002 order, Defendants filed a motion for partial summary judgment. The motion seeks summary judgment as to Plaintiff's first, fourth and fifth claims for relief under 42 U.S.C. § 1983 and the Unruh Act, respectively. Defendants also filed a motion for leave to file a motion for reconsideration of the Court's order granting in part and denying in part their prior motion for summary judgment. The Court granted Defendants' motion for leave to file a motion for reconsideration and noticed the motion for hearing in conjunction with the Defendants' motion for partial summary judgment.

## III. DISCUSSION

### A. Motion for Reconsideration.

Defendants seeks reconsideration of the Court's ruling regarding Tyler B.'s failure to exhaust his administrative remedies pursuant to the IDEA, as well as its finding that equitable tolling applies to the fourth and fifth claims for relief.

Plaintiff opposes the motion for reconsideration on the ground that the motion fails to meet the requirements of the Local Rules of this Court in that it presents no new arguments. Plaintiff seeks sanctions against Defendants for the filing of the motion for reconsideration since it presents no new facts or legal authority.

■ Civil Local Rule 7–9(b) provides that a party seeking reconsideration of a court order must specifically show: (1) a material difference in fact or law exists from that which was presented to the Court; (2) the emergence of new material facts or a change in the law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to it. Defendants seek reconsideration in this case on the basis that the Court failed to consider a Ninth Circuit ruling which was issued after the briefing on their motion was complete. The Court finds that reconsideration is warranted to give closer scrutiny to the law with respect to exhaustion under IDEA and to give further scrutiny to the Ninth Circuit's decision in *Robb v. Bethel School District*, 308 F.3d 1047 (9th Cir. 2002). Therefore, the motion for reconsideration is granted and the motion for sanctions is denied.

### B. Exhaustion.

Defendants move the Court to reconsider its denial of partial summary judgment on the ground that Tyler B. failed to exhaust the IDEA administrative process. In his papers in opposition to the motion for partial summary judgment, Tyler B. reiterated his argument that exhaustion was not required because the remedy he is seeking in this action is money damages for civil rights violations under § 1983 and other federal and state laws and not educational benefits under IDEA. However, in addition to reiterating this argument, at the hearing on these motions, without conceding that exhaustion is necessary, Tyler B. also argued that he satisfied the exhaustion requirement of IDEA through the complaint which his parents filed with the Department of Education in 1998.

The IDEA provides that a complainant may file an action under the Constitution, the ADA, Title V of the Rehabilitation Act or other federal laws which protect the rights of children with disabilities, ".... except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same

extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(f).

Under IDEA, parents are entitled to complain if they believe that their child is not receiving ". . . . a free appropriate public education. . . ." 20 U.S.C. § 1415(b)(6). After making their complaint, parents are entitled to "an impartial due process hearing." *Id.* § 1415(f). A decision of the due process hearing "shall be final," *id.* § 1415(i)(1)(A), except that "[a]ny party aggrieved by the findings and decision . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States." *Id.* § 1415(i)(2)(A). These procedures, including the available appeal, must be explained to parents in writing upon the filing of an administrative complaint. *Id.* § 1415(d).

To comply with the due process hearing requirement of IDEA, California adopted Education Code §§ 56500–56507. Under these provisions, a parent may initiate a due process hearing regarding the provision of a free appropriate public education for a child and that hearing will be conducted "at the state level." *Id.* at § 56501(a), (b)(4). The decision of the hearing officer "shall be the final administrative determination and binding on all parties" unless a party "exercis[es] the right to appeal the decision to a court of competent jurisdiction . . . within 90 days of receipt of the hearing decision." *Id.* § 56505(g), (i).

Tyler B., through his grandmother, filed a compliance complaint under the California Education Code on October 8, 1997. In response to that complaint, a compliance report was issued by the California Department of Education on February 27, 1998. On March 26, 1998, Tyler B.'s mother requested intervention by the state as a result of Defendants' alleged non-compliance with the state's compliance report. In response to this request, a due process hearing was scheduled on April 23 and 24, 1998. The parties were urged, however, to attempt to mediate their dispute.

The parties agreed to attempt to mediate and met with their assigned mediator, Kathleen Feyen. Based on this meeting, the parties began to resolve their differences and agreed to reschedule the due process hearing in an attempt to resolve the disputes through mediation. The due process hearing was rescheduled to May 21 and 22, 1998. In the meantime, it appears that the California Department of Education continued to investigate Tyler B.'s mother's complaint that the district was not complying with the report issued on February 27, 1998.

On May 29, 1998, the Special Education Hearing Office issued a letter to Tyler B.'s mother indicating its understanding that the parties had agreed to take the due process hearing off calendar. Although not explicitly stated in the letter, it is implied that the parties were continuing to mediate their disputes.

On July 9, 1998, the California Department of Education issued a second compliance report. This report confirmed Plaintiffs' complaints that the District was not in compliance with the Department's initial report and ordered the District to comply with its findings. The District sought reconsideration of this report and, on August 10, 1998, the California Department of Education issued a letter stating that it supports the report as written.

In December of 1998, Tyler B.'s mother filed a discrimination complaint with the United States Department of Education. After reviewing the complaint and conducting an investigation, the Department of Education concluded that the parties were cooperating and reaching an appropriate resolution of their dispute. There-

fore, the Department of Education closed its file.

Based on this record, it is clear that Plaintiff never received a due process hearing. The record shows that the parties agreed to vacate the due process hearing and pursue mediation. The record also shows that, following the mediation process, Tyler B. and his parents sought compensation for their alleged injuries through the court system. They first filed a complaint in state court and, later, filed the complaints in this Court. It is undisputed that a due process hearing was never held.

Tyler B. argues that, although his compliance complaints did not result in the culmination of a due process hearing, he should be deemed to have exhausted the administrative process required under IDEA since he initiated a review at the state level which fulfilled the essential purposes of the IDEA administrative process. Tyler B. cites *Porter v. Board of Trustees of Manhattan Beach*, 307 F.3d 1064 (9th Cir.2002) in support of his argument.

In *Porter*, the Ninth Circuit provided a very thorough and detailed discussion of the exhaustion requirement set forth in the IDEA. Dashiel Porter, an autistic child, was a student in the Manhattan Beach Unified School District ("MBUSD"). Believing that MBUSD was failing to provide their with a free appropriate public education, Dashiel's parents filed a complaint with the California Department of Education. A due process hearing was conducted by California's Special Education Hearing Office ("SEHO"). The hearing officer found that Dashiel had significant educational deficiencies resulting from the failure of MBUSD to provide Dashiel a free appropriate public education. Based on this finding, the hearing officer ordered the MBUSD and its Board of Trustees to provide Dashiel with compensatory education during the 1999–2000 school year.

During the course of the 1999–2000 school year, MBUSD officials held a series of meetings with the Porters, but MBUSD never implemented a full compensatory education program. Instead, the Porters hired a private tutor for Dashiel at their own expense.

On August 7, 2000, the Porters filed a complaint in federal district court against MBUSD and various officials seeing an injunction and monetary damages, for violations of the IDEA and California law related to the failure of the District and its officials to comply with the hearing officer's order.

The district court dismissed the Porters' complaint, without prejudice, for lack of jurisdiction because the court concluded that the Porters had not sought to enforce the hearing officer's order through the California Complaint Resolution Procedure ("CRP") Cal.Code Regs. Tit. 5, § 4610(a) [2].

---

2. In addition to the requirements for seeking administrative relief under IDEA, the U.S. Department of Education promulgated regulations requiring each recipient of federal funds, including funds provided through the IDEA, to put in place a Complaint Resolution Procedure ("CRP"). 34 C.F.R. §§ 300.660–300.662 (citing 20 U.S.C. § 1221e–3 as authority for rules); *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1029 (9th Cir.2000). The regulations require each state education agency to adopt written procedures for "[r]esolving any complaint" regarding the education of a child with a disability. 34 C.F.R. § 300.660(a). The regulations permit a complaint to be filed with both the CRP and the IDEA due process hearing system, in which case the CRP must await the due process hearing's resolution of overlapping issues, which is then binding on the CRP. *Id.* § 300.661(c). The regulations state further that the CRP must resolve a complaint alleging a public agency's failure to implement a due process decision. *Id.* § 300.661(c)(3). The regulations do not, however, state that a parent must exhaust the CRP to enforce a due process decision in court.

Based on Eleventh Amendment immunity, the court dismissed the § 1983 claim with prejudice as to the State and Local Defendants sued in their official capacities. The court determined that, with the dismissal of the IDEA and § 1983 claims, there remained no jurisdictional basis to hear the Porters' state law claims.

On appeal, the Ninth Circuit held that the Porters were not required to exhaust California's CRP before filing an action under the IDEA and § 1983 to enforce the hearing officer's order. The Ninth Circuit found that the Porters exhausted IDEA's administrative process when they filed a complaint for a due process hearing and received an order in their favor. Since neither they nor the MBUSD appealed that order to a court of competent jurisdiction, the order was final and binding under the IDEA and state law. 20 U.S.C. § 1415(i)(1)(A); Cal. Educ.Code § 56505(g), (i).

The *Porter* court noted that "where Congress has provided for the exhaustion of administrative procedures," Congress' intent "is of paramount importance ... because Congress is vested with the power to prescribe the basic procedural scheme under which claims may be heard in federal courts." *Patsy v. Bd. of Regents,* 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Therefore, the Court focused its inquiry on whether requiring the exhaustion of California's CRP would be consistent with IDEA's procedural scheme. The Circuit concluded it would not and held that requiring exhaustion of California's CRP to file suit based on a failure to implement an unappealed administrative order would add an additional step of administrative exhaustion not contemplated by the IDEA. Once a due process hearing officer issues an order that is not appealed by either party, the IDEA requires that the order be treated as "final." 20 U.S.C. § 1415(i)(1)(A). No other administrative procedures are required to be exhausted.

■ The *Porter* case does not support Tyler B.'s argument. Tyler B.'s case is in a very different procedural posture than the *Porter* case. As noted, in *Porter,* a due process hearing was concluded and a final order was issued by the hearing officer on the child's behalf, which is required by 20 U.S.C. § 1415. In Tyler B.'s case, although due process hearings were scheduled, by agreements of the parties they were cancelled. The initiation of a state level review which did not proceed to a due process hearing is not literal exhaustion nor its equivalent. Therefore, the Court finds that Tyler B. has not exhausted his administrative remedies under the IDEA.

In compliance with the U.S. Department of Education's regulations regarding the establishment of a CRP, California established "a uniform system of complaint processing for specified programs or activities which receive state or federal funding." Cal.Code Regs. tit. 5, § 4610(a). These regulations authorize the state Superintendent of Public Instruction to investigate and attempt to resolve any complaint alleging a violation of the IDEA, including a complaint that "alleges that the local educational agency ... fails or refuses to comply with the [IDEA] due process procedures ... or has failed or refused to implement a due process hearing order." *Id.* § 4650(a)(viii)(B). In such circumstances, the Superintendent shall offer to mediate the dispute and must resolve any remaining issues within 60 days of the receipt of the complaint, absent exceptional circumstances. *Id.* §§ 4660, 4662. Upon determination that a local agency is in violation of federal or state law, including violation of a due process hearing order, "the Superintendent shall notify the local agency of the action he or she will take to effect compliance," and "may use any means authorized by law to effect compliance," including withholding fiscal support and proceeding in a court of competent jurisdiction for an appropriate order compelling compliance. *Id.* § 4670.

Having found that he has not exhausted, this case must be dismissed unless the Court reconfirms its earlier decision that exhaustion is not necessary due to the nature of this lawsuit.

### C. Exemption for Exhaustion.

■ Tyler B. argues that he is not seeking relief which is "also available under the IDEA" and, therefore, is not required to exhaust administrative remedies pursuant to such statute. *Witte v. Clark County School Dist.,* 197 F.3d 1271 (9th Cir.1999). He contends that this case is simply to obtain monetary damages for acts which occurred in the past; damages which are unavailable under IDEA. Tyler B. currently attends school in the District and is receiving the proper services to which he is entitled. Therefore, he argues that there would be no administrative procedure to follow under the IDEA in this particular case.

· Defendants contend that, although Tyler B. has not filed a claim pursuant to the IDEA, both the statute and caselaw dictate that when a disabled student brings claims asserting that a school failed to provide appropriate special education, the student must exhaust IDEA administrative remedies to the same extent as if the suit had been brought under the IDEA. *Robb v. Bethel School Dist.,* 308 F.3d 1047 (9th Cir.2002); *Doe v. Arizona Dept. Of Education,* 111 F.3d 678, 684–685 (9th Cir. 1997).

Plaintiff contends that during various time periods he was actually deprived of educational benefits and seeks damages as a result of such deprivations. He contends that he is not seeking any remedies available to him under IDEA. However, the Ninth Circuit held in *Robb* that this is not dispositive of the issue. Rather, the dispositive question is "whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Robb v. Bethel School District,* 308 F.3d at 1050 (emphasis added). Clearly, lost educational benefits could be redressed by IDEA.

In addition, this case seeks money to compensate Tyler B. for emotional distress, embarrassment, and humiliation. As the Court asked in the *Robb* case, this Court must ask, why does Plaintiff seek such compensation? Presumably to pay for services such as psychiatrists and tutors to assist in the recovery of Tyler B. These services, however, may be available under the IDEA. *See* 20 U.S.C. § 1401(22).

Plaintiff strongly argues that he is already receiving his special educational benefits and to be required at this stage of his education to pursue administrative remedies under the IDEA would be futile. Plaintiff contends that all parties agree that issues regarding special education benefits for Tyler have been resolved. *See* Brandy B. And Cathy Hormann Declarations. He argues, therefore, that he would "look silly in front of a hearing officer explaining that Tyler's special education program was appropriate." Plaintiff's Opposition to Motion for Partial Summary Judgment at 14, lines 20–21.

While the Court acknowledges that the District has implemented a special education program for Tyler, it does not find that such fact resolves Plaintiff's complaint and request for damages. As noted, special education programs are only one of the many forms of relief which are available to individuals who qualify under the IDEA. Tyler has not dropped his complaint simply because he is now receiving the educational benefits to which he is entitled. Rather, he is seeking damages for the deprivation of such benefits—deprivations which may be remedied under the IDEA statute. Since Plaintiff may well benefit from counseling, rehabilitation, and other supportive services which are avail-

able under the IDEA, the Court does not agree with Plaintiff's argument that exhaustion is now futile.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Tyler B. must first exhaust his claims under the IDEA. Since the Court finds that exhaustion has not been completed, it does not reach the merits of any of Tyler B.'s claims against Defendants. Therefore, although the Court grants Defendants' motion for reconsideration regarding the exhaustion issue, it finds that it is inappropriate to grant Defendants' motion for summary judgment in this instance. Rather, the Court treats Defendants' motion for summary judgment regarding the lack of exhaustion pursuant to IDEA as a motion to dismiss, grants the motion and dismisses Tyler B.'s claims.

Since this decision requires dismissal of all claims, the Court finds that it is unnecessary to address Defendants' motion for partial summary judgment. The Court dismisses this case without prejudice.