BEA, Circuit Judge,
dissenting:
I respectfully dissent. The district court did not err when it failed to admit the 2007 Jacques report, which could not possibly have had any relevance to the school district’s 2004 evaluation of E.M. Nor did the district court err by “failing” to consider a claim with which neither we nor the district court were presented: that E.M.’s auditory processing disorder qualified him for special education under the “other health impairment” provision of the IDEA. See 20 U.S.C. § 1401(3)(A). In my view, the majority reverses the district court for its failure to admit — or “adequately” to consider — evidence and claims *1008 which were either irrelevant, waived, or improperly presented.
The majority reverses and remands based on two perceived “failings” by the district court. First, the majority faults the district court’s discretionary determination that a 2007 report by Cheryl Jacques did not qualify as relevant “additional evidence.” 20 U.S.C. § 1415(e)(2). Second, the majority holds that the district court was required to consider (apparently sua sponte) E.M.’s contention — raised for the first time at oral argument before this court — that his auditory processing disorder qualified him for special education as a child with an “other health impairment.” 20 U.S.C. § 1401(3)(A).
As to the Jacques report, the relevant statutory requirement provides that the district court “shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and ... shall grant such relief as the court determines is appropriate.” 20 U.S.C. § 1415(e)(2). Despite the seemingly mandatory language of the statute, “the district court has discretion to determine what qualifies as ‘additional evidence.’ ” Ojai Unified School Dist. v. Jackson, 4 F.3d 1467, 1473 (9th Cir.1993). In the district court’s discretion, additional evidence “might include ... evidence concerning relevant events occurring subsequent to the administrative hearing.” Id. at 1473 (emphasis added). However, “actions of the school systems ... cannot be judged exclusively in hindsight,” and a school district’s actions must be judged as “a snapshot, not a retrospective.” Adams by & through Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir.1999).
In light of these standards, the district court correctly determined that the Jacques report was not “relevant” additional evidence. Throughout this litigation, E.M. has contended that the school district erred in October 200k when it determined E.M. was ineligible for special education. E.M. seeks monetary compensation for that claimed 200k error.[1] But Dr. Jacques’s report relied upon a test performed in 2007, and one of the key assessment tools she used in performing the 2007 evaluation — the Woodcoek-Johnson III 2005 Normative Update — had not even been published in 2004. E.M.’s 2007 scores on a test which the school district could not possibly have administered in 2004 is irrelevant to the question whether the school district erred in its 2004 determination.
The majority nevertheless contends that Dr. Jacques’s report — which showed a “legally significant discrepancy between ability and achievement in 2007” — is potentially relevant because it “may make it more likely that a legally significant discrepancy was present in 2004.” As an initial matter, the Jacques report itself undermines that conclusion. Dr. Jacques stated that discrepancies between her evaluation of E.M. and his previous assessments were likely attributable to the fact that the “updated tests are harder” and the “increased academic load in middle school ... contributed to a widening gap in his intelligence and his achievement levels.” (emphasis *1009 added). In 2004, E.M. was not yet in middle school. He was in the fourth grade. Dr. Jacques’s report thus makes it clear that E.M.’s disability was not as clearly noticeable in 2004 as it was in 2007.
Yet even if the majority is correct and the 2007 Jacques report made it more likely that E.M. in fact had a learning disability in 2004, the issue in this case is not the apodictic truth of E.M.’s condition when the school district first assessed him. Rather, as the majority itself holds, the issue is “whether [the school district’s] choice among test scores was reasonable.” Maj. Op. at 1004. The reasonableness of the school district’s choice of test scores in 2004 could not have been affected by a test administered in 2007 using assessment tools which were unknown in 2004. Thus, in light of our previous admonitions that a school district’s actions cannot be judged in “hindsight,” the district court was well within its discretion when it declined to consider the Jacques report.[2]
I am therefore puzzled by the majority’s conclusion that the district court did not weigh the Jacques report’s relevance, and the majority’s decision to remand to the district court so the district court may determine such relevance anew. The district court’s order on E.M.’s motion to supplement the record reads:
E.M. also argues his recent assessment ... should be admitted because this evidence will shed light on the correctness of the ALJ’s determination. Defendants argue that this evidence is not relevant to the Court’s analysis of the diagnosis during the relevant time period.... The Ninth Circuit has held that educational programs are reviewed not in hindsight but in light of the information available at the time the program was developed. Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir.1993) (“Actions of the school system cannot ... be judged exclusively in hindsight.”). Because the Court concludes that the after-acquired evidence E.M. seeks to introduce is not necessary to evaluate the ALJ’s determination, it will not be admitted.
Emphasis added.
It is clear from this order that the district court did weigh the relevance of the Jacques report. The district court credited the defendants’ contention that the Jacques report — written three years after the school district’s purportedly erroneous diagnosis — was not “relevant to the Court’s analysis” of that error during the “relevant time period.” In so doing, the district court cited our decision in Adams, which holds that as a matter of law, a school district’s actions cannot be judged exclusively in hindsight. In determining that the district court failed to consider the Jacques report’s relevance, the majority plucks out of context the district court’s determination that the Jacques report was “not necessary to evaluate the ALJ’s determination,” and remands because it apparently finds fault in this language. But it is clear from the order that the district court so found because the Jacques report is irrelevant to the issue whether the school district erred in 2004.[3] I would not *1010 remand to the district court — wasting time and resources — so that the district court can again make a determination it has already made.
The majority further holds that the district court erred when it failed to consider whether a purported auditory processing disorder qualified E.M. for special education as a child with an “other health impairment.” See 20 U.S.C. § 1401(3)(A). But we may not address the question whether E.M.’s auditory processing disorder qualified him for special education as a standalone “other health impairment,” because E.M. did not raise this argument before the district court, nor in his opening brief before this court. This court reviews only issues which “are argued specifically and distinctly in a party’s opening brief.” Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n. 4 (9th Cir.2010). Here-contrary to the majority’s misleading contention that E.M. argued this issue in his opening brief, E.M. did not submit his auditory-processing-disorder-as-an-other-health-impairment claim in his opening brief at all.[4]
Thus, as an initial matter, I would not reach the question whether the district court failed to consider E.M.’s other health impairment claim.
Yet even were we to disregard Ninth Circuit precedent and consider such a claim, E.M. also did not raise an auditory-processing-disorder-as-an-other-health-impairment claim in the district court. The majority misleadingly contends that because 1) E.M.’s complaint to the district court alleged that “testimonial and documentary evidence established a strong basis for suspecting that E.M. can qualify for special education under other [than specific learning disability] eligibility categories,” and 2) there was evidence that Dr. Kaspar diagnosed E.M. with an auditory processing disorder, the district court should have pieced these two fragments together to create an auditory-processing-disorder-as-an-other-health-impairment claim on E.M.’s behalf. But throughout this litigation, E.M. contended that Dr. Kaspar’s diagnosis was relevant only for his specific learning disability claim.[5] E.M. never contended before the district court — nor before this court — that Dr. Kaspar’s diagnosis should have qualified him for special education as an other health impairment. Nor was the district court required to piece together vague and isolated phrases from E.M.’s complaint to create an auditory-processing-disorder-as-an-other-health-impairment claim on E.M.’s behalf. “Judges are not like pigs, *1011 hunting for truffles buried in briefs.” Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir.1994). I am puzzled as to how this court can reverse the district court for its failure to consider a claim with which it was never presented.
I would affirm the district court’s decision in its entirety.

. E.M. contends that this court may award monetary "remedies” under the IDEA. However, "money damages are not available under the IDEA,” Robb v. Bethel Sch. Dist. #403, 308 F.3d 1047, 1049 (9th Cir.2002), and E.M. does not seek reimbursement of private schooling costs under 20 U.S.C. § 1412(a)(10)(C), because E.M. never enrolled at a private institution. Thus, the only monetary remedies E.M. can obtain are attorneys' fees and costs, which may only be awarded to a "prevailing party.” 20 U.S.C. § 1415(i)(3)(B)(i)(I). E.M. can prevail only if the school district erred in its 2004 evaluation. As explained above, I do not think the district court erred in ruling in favor of the school district; E.M. did not prevail. He should take nothing.

. It is worth noting that E.M. is not challenging a continued failure by the school district to diagnose him for special education in light of the Jacques report. Indeed, only two months after Dr. Jacques completed her assessment, the school district reassessed E.M. and found that he was eligible for such services. E.M. seeks monetary compensation based on the school district's alleged error in its 2004 evaluation.

. Moreover, the phrase "necessary to evaluate” is synonymous with "relevant.” Evidence is relevant if it "moves the needle” towards one determination or another; if it "moves the needle,” it must be evaluated. It follows that, if irrelevant, it need not be evaluated.

. The majority further notes that "[B]oth parties addressed the issue at oral argument.” Maj. Op. at 1007. This is true, but only because E.M.’s counsel raised the issue for the first time at oral argument, and devoted the bulk of her oral argument to this claim. Indeed, during oral argument, counsel for the school district noted that she would address the arguments raised by E.M.'s counsel at opening argument, but further noted that this was one of many "issues ... which we consider new.” I am aware of no authority which holds that a waived issue somehow ceases to be waived if an attorney ambushes a party-opponent by raising the issue for the first time at oral argument, and the party-opponent is thus forced to respond.

. A specific learning disability requires that 1) a child has a "severe statistical discrepancy” between "ability” and "achievement” test scores, and 2) that discrepancy be caused by a disorder in a "basic psychological process.” See 20 U.S.C. § 1401(30); Cal. Educ.Code § 56337. A child has an other health impairment when he has "limited strength, vitality, or alertness ... [that] is due to chronic or acute health problems.” 20 U.S.C. § 1401(30); 34 C.F.R. § 300.8(c)(9). Throughout this litigation, E.M. has contended that his alleged auditory processing disorder qualifies as a "disorder in a basic psychological process” for the purposes of a specific learning disability.