**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BARBARA KUTASI; JOHN KUTASI,
           *Plaintiffs-Appellants,*

           and

SHANE KUTASI, a minor through his
parent, Barbara Kutasi,
                    *Plaintiff,*

           v.

LAS VIRGENES UNIFIED SCHOOL
DISTRICT; BOARD OF TRUSTEES OF
LAS VIRGENES UNIFIED SCHOOL
DISTRICT; DONALD ZIMRING; JOHN
FITZPATRICK; E. JOSEPH NARDO,
           *Defendants-Appellees.*

No. 05-56006

D.C. No.
CV-05-01592-DSF

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
May 14, 2007—Pasadena, California

Filed July 19, 2007

Before: Stephen Reinhardt, Raymond C. Fisher and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Fisher

8783

---

**COUNSEL**

Bryan C. Altman (argued) and Jennifer L. Gentin, Altman & Morris, Los Angeles, California, for the plaintiffs-appellants.

Carol A. Woo, Benton, Orr, Duval & Buckingham, Ventura, California, for the defendants-appellees.

---

**OPINION**

FISHER, Circuit Judge:

This case involves application of the exhaustion requirement under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1415(l). We reaffirm the principle that plaintiffs must exhaust administrative remedies before filing a civil lawsuit if they seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures. *See Robb v. Bethel Sch. Dist. # 403*, 308 F.3d 1047, 1050 (9th Cir. 2002). Accordingly, we affirm the district court's dismissal without prejudice of the plaintiffs' complaint.

## BACKGROUND[1]

Shane Kutasi is an autistic boy who was 11 years old when the disputes at issue here arose. He attended the Round Meadow Elementary School in Calabasas, California, from 1999 until he graduated in 2004. In 1999, Shane's parents — John and Barbara Kutasi — and the Las Virgenes School District ("School District") agreed upon an individualized education program ("IEP"). In accordance with the 1999 IEP, Shane attended a general education first-grade class with an aide for most of the morning and received home schooling in the afternoon. The Kutasis and the School District, however, were unable to reach agreement on a modified IEP for Shane for the succeeding school years. As a result of a "stay put" order issued by the California Special Education Hearing Office ("SEHO") that extended the terms of the 1999 IEP, Shane continued to receive full inclusion in a classroom with a modified curriculum, as well as speech and occupational therapy services.

The complaint reveals a long history of apparently bitter disagreement between the Kutasis and the School District, and their conflict came to a head in the fall of 2004 after Shane's graduation from Round Meadow Elementary School.

---

[1]Because the Kutasis appeal from an order granting the School District's motion to dismiss, we accept all facts alleged in the Kutasis' complaint as true. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

Shane was scheduled to attend the A.E. Wright Middle School. But on August 27, 2004, three days before the 2004-05 school term began, the School District proposed an IEP that required Shane to be placed in a "Special Day Class," created for students with disabilities regardless of their age, grade or specific disability. The Kutasis rejected the School District's proposal, and the parties continued to differ over the kind of educational and related services to be provided Shane. Shane briefly attended general education classes at Wright, but was denied access to the school after three days by Principal Steven Rosensweig, who claimed that Shane was not properly enrolled. Since September 2004, Shane has been schooled at home by a team of behavioral therapists pursuant to the stay put order.

The Kutasis filed a complaint in March 2005 in the federal district court for the Central District of California, on their own behalf and as guardian ad litem for Shane. Their complaint charged the defendants — the Las Virgenes Unified School District, the Board of Trustees of the District, Dr. Donald Zimring (Acting Superintendent of the District), John Fitzpatrick (Acting Superintendent of the District) and E. Joseph Nardo (Director of Special Education Services for the District) (collectively "Defendants") — with two counts of violating 42 U.S.C. § 1983 and one count of violating § 504 of the Rehabilitation Act of 1973. The Kutasis alleged that the Defendants "engaged in a pattern and practice of retaliatory and discriminatory actions against Shane and his parents." The complaint identified 18 alleged "retaliatory and discriminatory actions":

> (1) [F]ailing to properly investigate and remedy complaints of non-compliance filed with the United States Department of Education, Office for Civil Rights ("OCR");
>
> (2) interfering with Barbara and John Kutasis' custodial rights over Shane;

(3)   in September 2004, refusing to allow Shane to attend A.E. Wright after he had been assigned classes and had already attended school;

(4)   repeatedly refusing to reimburse the Kutasis for Shane's therapy by failing to pay invoices presented pursuant to the Stay Put Order;

(5)   on February 9, 2004, singling out and demanding that the Kutasis turn over videotapes of Shane made by Barbara Kutasi at Round Meadow while not requiring this of any other parents;

(6)   from September 2000 through May 2004, requiring that the Kutasis sign Shane in and out from school everyday when no other student was required to do so;

(7)   refusing to allow the Kutasis to visit the Resource Classroom during a tour of the A.E. Wright camps while allowing other parents to do so;

(8)   on two separate occasions demanding that the Kutasis leave the Special Day Class at A.E. Wright during an observation;

(9)   humiliating Barbara Kutasi in front of other students and parents each time she visited Shane at Round Meadow;

(10)   repeatedly setting Shane's IEP on the same date and time — but different location — as the Kutasis' other child's IEP;

(11)   deliberately setting an IEP on Shane's birthday in August 2003 and August 2004;

(12)   refusing to allow the Kutasis to volunteer for several field trips that were taken at Round Meadow;

(13)   requiring that Barbara Kutasi obtain a TB test and a medical release in order to be a "room parent" volunteer when this "rule" was not enforced against any other parent;

(14)   conducting unnecessary and unreasonable surveillance of the Kutasis when they visited Round Meadow;

(15)   attempting to obtain Shane's private medical records without the Kutasis' permission and consent;

(16)   failing to provide the Kutasis periodic reports of Shane's progress while other parents receive such reports;

(17)   demanding that another of the Kutasi children personally attend Shane's IEP meeting; and

(18)   otherwise punishing and threatening Plaintiffs for having exercised constitutionally and statutorily protected rights.

On April 8, 2005 — after the Kutasis filed their complaint in federal court, but before the district court issued a ruling — the School District filed an administrative hearing request, asking the SEHO to approve the August 2004 proposed IEP. The School District's request did not refer to any of the discriminatory acts alleged in the Kutasis' complaint. While the School District's administrative hearing was still pending before the SEHO, the district court granted the Defendants' motion to dismiss, holding that the Kutasis failed to exhaust the IDEA's administrative remedies before filing suit in fed-

eral court. Recognizing that "[t]he threshold question is whether the injuries alleged could have been redressed *to any degree* by the IDEA's administrative procedures and remedies" (emphasis in original), the court found that "[e]ven a cursory review of Plaintiffs' Complaint makes clear that some of the alleged injuries could almost certainly be redressed by the IDEA's administrative procedures and remedies." The court concluded that, for example, an administrative hearing "could potentially be dispositive, or, at the least, would be helpful to this Court's analysis" of the Kutasis' allegations that the Defendants refused to allow Shane to attend Wright and repeatedly refused to reimburse them for Shane's therapy. The Kutasis filed a timely notice of appeal.

After the district court dismissed the Kutasis' complaint, the SEHO issued a ruling against the School District on the August 2004 proposed IEP, finding that it did not constitute a free appropriate public education in the least restrictive environment. The SEHO's opinion did not, however, address any of the issues raised by the Kutasis' complaint. Thus, the Kutasis' claims still have not been exhausted.

## STANDARD OF REVIEW

Whether exhaustion is required under the IDEA in a particular case is a question of law that this court reviews de novo. *See Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1274 (9th Cir. 1999).

## DISCUSSION

### I. Statutory Framework

The IDEA is a comprehensive educational scheme that confers on students with disabilities a substantive right to public education. *See Van Duyn v. Baker Sch. Dist. 5J*, 481 F.3d 770, 776 (9th Cir. 2007); *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). The IDEA provides financial

assistance to enable states to meet their educational needs, but conditions funding on the effectuation of a policy that assures all children with disabilities the right to a free appropriate public education. *See* 20 U.S.C. § 1412(a)(1). To that end, the IDEA requires that school districts develop an IEP for each child with a disability. *See Winkelman v. Parma City Sch. Dist.*, 127 S. Ct. 1994, 2000 (2007).

**[1]** When parents are unsatisfied with "the adequacy of the education provided, the construction of the IEP, or some related matter, IDEA provides procedural recourse." *Id.* at 2001. Participating states must establish procedures giving "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A); *see also* Cal. Educ. Code § 56501(a). After a complaint is filed, the local or state educational agency must convene a meeting with the parents and the relevant members of the IEP team "where the parents of the child discuss their complaint" and the educational agency "is provided the opportunity to [reach a resolution]." 20 U.S.C. § 1415(f)(1)(B)(i). If the educational agency cannot resolve the complaint "to the satisfaction of the parents within 30 days of the receipt of the complaint," *id.* § 1415(f)(B)(ii), then the parents are entitled to request "an impartial due process hearing," *id.* § 1415(f).

**[2]** California has adopted legislation to comply with IDEA's due process hearing requirements. *See* Cal. Educ. Code §§ 56500-56507. Under state law, a parent may initiate a due process hearing regarding the provision of a free appropriate public education for a child and that hearing will be conducted "at the state level." *Id.* at § 56501(a), (b)(4). The IDEA mandates that administrative hearings be conducted by officers who possess knowledge of relevant education law, and are capable of conducting hearings and rendering decisions "in accordance with appropriate, standard legal prac-

tice." 20 U.S.C. § 1415(f)(3)(A). To that end, California's administrative hearings must be conducted by "a hearing officer knowledgeable in administrative hearings and under contract with the State Department of Education." Cal. Code Regs. tit. v, § 3082. A decision resulting from the due process hearing "shall be final," 20 U.S.C. § 1415(i)(1)(A), except that "[a]ny party aggrieved by the findings and decision . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States," *id.* § 1415(i)(2)(A); *see also* Cal. Educ. Code § 56505(k).

**[3]** Parents and disabled students may seek relief for education-related injuries under federal laws other than the IDEA. *See Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 920 (9th Cir. 2005). However, the IDEA requires that before plaintiffs may file a civil action under "the Constitution, the Americans with Disabilities Act, title V of the Rehabilitation Act or other Federal laws protecting the rights of children with disabilities," they must exhaust the IDEA's due process hearing procedure if the action "seek[s] relief that is also available under" the IDEA. 20 U.S.C. § 1415(l). The IDEA's exhaustion requirement recognizes the traditionally strong state and local interest in education, allows for the exercise of discretion and educational expertise by state agencies, affords full exploration of technical educational issues, furthers development of a factual record and promotes judicial efficiency by giving state and local agencies the first opportunity to correct shortcomings. *See Hoeft*, 967 F.2d at 1303.

Resisting the district court's application of § 1415(l) to their claims, the Kutasis argue that they were not required to exhaust the IDEA's administrative procedures for two reasons. First, they request that we separate their claims from those of their son, and argue that exhaustion should not be required for their claims because the "IDEA provides administrative remedies for children who need special education but

*not* for their parents." Second, the Kutasis argue that even if exhaustion was required here, exhaustion would have been futile because their injuries could not have been redressed to any degree by a due process hearing. Neither argument persuades us to exempt the Kutasis from § 1415(l)'s exhaustion requirement.

## II.   Availability of Administrative Remedies

**[4]** First, we address the Kutasis' assertion that the IDEA does not provide parents with any administrative remedies to exhaust. Implicitly conceding that their complaint included claims brought on Shane's behalf that do require exhaustion, the Kutasis request that on this appeal, we separate their claims as parents from those of their son. We decline to do so. The Kutasis did not present this option to the district court and, adhering to our general rule, we will not "reframe this appeal to review what would be (in effect) a different case than the one the district court decided below." *Robb*, 308 F.3d at 1053 n.4. Taking the complaint as originally pled, no one disputes that, at the very least, Shane could have sought a remedy through the IDEA's administrative procedures.

**[5]** Even if we were to separate the parents' claims on appeal, we would still reject the Kutasis' attempt to avoid the IDEA's exhaustion requirement. The IDEA defines one of its purposes as seeking "to ensure that the rights of children with disabilities *and parents* of such children are protected." 20 U.S.C. § 1400(d)(1)(B) (emphasis added). The Kutasis interpret this language to mean that the IDEA and its administrative procedures protect only the rights of disabled children. But the Supreme Court recently rejected this interpretation, concluding that "[t]he word 'rights' in the quoted language refers to the rights of parents as well as the rights of the child." *Winkelman*, 127 S. Ct. at 2002. Accordingly, "parents enjoy enforceable rights at the administrative stage" of an IDEA proceeding. *Id.* The Kutasis' statutory argument plainly fails.

### III. Futility of Administrative Remedies

The Kutasis also argue that any attempt at exhaustion would have been futile. "The [IDEA's] exhaustion requirement is not . . . a rigid one." *Porter v. Bd. of Trustees of Manhattan Beach*, 307 F.3d 1064, 1069 (9th Cir. 2002). Plaintiffs need not seek a due process hearing "where resort to the administrative process would either be futile or inadequate." *Hoeft*, 967 F.3d at 1303. But a party that alleges futility or inadequacy of IDEA administrative procedures bears the burden of proof. *See Robb*, 308 F.3d at 1050 n.2.

**[6]** The futility exception derives from the language of the IDEA itself, which limits the exhaustion requirement to cases where the plaintiff "seek[s] relief that is also available" under the IDEA. 20 U.S.C. § 1415(l). If the plaintiff seeks a remedy for an injury that could not be redressed by the IDEA's administrative procedures, then the claim falls outside § 1415(l)'s rubric and exhaustion is unnecessary. *See Robb*, 308 F.3d at 1050. On the other hand, if the injury could be redressed "to any degree" by the IDEA's administrative procedures — or if the IDEA's ability to remedy an injury is unclear — then exhaustion is required. *See id.*

**[7]** Our futility analysis is guided by three cases that have addressed the scope of the IDEA's exhaustion requirement. In *Witte*, 197 F.3d at 1272-73, a student with Tourette's Syndrome filed an action under 42 U.S.C. § 1983, the Rehabilitation Act and the Americans with Disabilities Act after he was allegedly force-fed oatmeal, strangled and subjected to emotional abuse. The plaintiff sought money damages, which are not "available under" the IDEA. *See id.* at 1275. We concluded that because the plaintiff sought only monetary damages, and because all educational issues had already been resolved to the parties' mutual satisfaction through the IEP process, the plaintiff was not "seeking relief that is also available" under the IDEA. *Id.* (quoting 20 U.S.C. § 1415(l)).

*Blanchard v. Morton School District*, 420 F.3d 918 (9th Cir. 2005), also involved claims for which the IDEA provided no remedy. The plaintiff in *Blanchard* — the mother of an autistic child — successfully argued that exhaustion of IDEA administrative proceedings was not required because she sought damages for her own emotional distress caused by the defendants' conduct. Blanchard had represented her son in a series of administrative actions against the defendant school district, resulting in an order compelling the district to implement an IEP and to provide compensatory education to the student to remedy the district's past failings. *See id.* at 920. Blanchard's complaint was limited to money damages for her emotional distress due to the defendants' alleged "deliberate indifference and violation of rights," as well as reimbursement for wages lost while pursuing her son's remedies under the IDEA. *Id.* at 920. Emphasizing that the plaintiff had "resolved the educational issues implicated by her son's disability and . . . obtained the educational relief available under the IDEA on behalf of her son," we concluded that exhaustion was not required because "Blanchard's emotional distress injuries and lost income could not be remedied through the educational remedies available under the IDEA." *Id.* at 921, 922 (citing *Witte*, 197 F.3d at 1275). Thus, "because the IDEA provide[d] *no remedy* for Blanchard," exhaustion was excused. *Id*. at 922 (emphasis added).

We circumscribed *Witte*, however, in *Robb v. Bethel School District # 403*, where we clarified that a plaintiff cannot evade the IDEA's exhaustion requirement merely by limiting a claim to money damages. There, a student's parents filed a § 1983 action on behalf of themselves and their daughter after the student was removed from her classroom and tutored by junior high and high school students. 308 F.3d at 1048. The plaintiffs requested money damages as compensation for "lost educational opportunities" and "emotional distress, humiliation, embarrassment, and psychological injury." *Id.* Even though an administrative proceeding could not provide relief in the form requested by the plaintiffs, we concluded "[i]t

would be inappropriate for a federal court to short-circuit the local school district's administrative process based on the possibility that some residue of the harm Ms. Robb allegedly suffered may not be fully remedied by the services Congress specified in the IDEA. We are not ready to say that money is the only balm." *Id.* at 1050. *Robb* distinguished *Witte* on three grounds: (1) the *Robb* plaintiffs had not "taken full advantage of the IDEA administrative procedures to secure the remedies available thereunder"; (2) they did not allege physical injury; and (3) they requested money damages for "psychological and educational injuries the IDEA may remedy." *Id.* at 1052.

**[8]** We conclude that the present case is controlled by *Robb* because, unlike the plaintiffs in *Witte* and *Blanchard*, the Kutasis have not resolved all educational issues underlying their claims. *See Witte*, 197 F.3d at 1275; *Blanchard*, 420 F.3d at 921-22. That much is obvious from the Kutasis' request for damages to remedy the Defendants' refusal "to allow Shane to attend A.E. Wright after he had been assigned classes and had already attended school." The School District's refusal to allow Shane to attend school is precisely the kind of educational injury that we expect plaintiffs to adjudicate at the administrative stage before seeking relief from a court of law. *See Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig*, 976 F.2d 487, 489 (9th Cir. 1992) (upholding SEHO decision ordering student's reinstatement at school); *see also Demers v. Leominster Sch. Dep't*, 96 F. Supp. 2d 55, 58 (D. Mass. 2000) (requiring that plaintiff seeking order directing school district to reinstate student in regular class program exhaust IDEA's administrative remedies).

**[9]** In the same vein, the Kutasis complain about injuries resulting from the Defendants' decision to schedule Shane's IEP conference for the same date and time as their other child's IEP conference and from the Defendants' failure to provide educational reports on Shane's progress. The Kutasis have not explained why these allegedly hostile bureaucratic acts could not have been remedied by the SEHO simply man-

dating periodic reports and appropriate meeting times in the future. *See Radcliffe v. Sch. Bd. of Hillsborough County*, 38 F. Supp. 2d 994, 1000 (M.D. Fla. 1999) (requiring exhaustion of plaintiffs' request for an injunction requiring the school district to hold an IEP meeting at a specific time). Although such a remedy from the SEHO would not provide the specific form of relief the Kutasis seek — money damages — it could alleviate the root cause of their injury. "For purposes of exhaustion, 'relief that is also available under' the IDEA does not necessarily mean relief that fully satisfies the aggrieved party. Rather, it means 'relief suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers.' " *Blanchard*, 420 F.3d at 921 (quoting *Robb*, 308 F.3d at 1049).

[10] The Kutasis' complaint also alleges that the Defendants have not adequately reimbursed them for Shane's at-home therapy provided pursuant to the stay put order. Once again, the Kutasis fail to bear their burden of proving that resort to the IDEA's administrative procedures would be futile. The SEHO has the authority to order reimbursement for therapy expenditures. *See Glendale Unified Sch. Dist. v. Almasi*, 122 F. Supp. 2d 1093, 1104 (C.D. Cal. 2000) (upholding SEHO order mandating reimbursement for occupational therapy); *see also Zasslow v. Menlo Park City Sch. Dist.*, 2001 WL 1488617, *4 (N.D. Cal. 2001) (reviewing order mandating reimbursement for speech and language therapy). Indeed, the Kutasis have themselves received such redress from an IDEA due process hearing in the past. Their notice of related cases submitted to the district court included a copy of a state court complaint the Kutasis filed in 2005, seeking $62,000 in damages. The state court complaint alleged that on October 13, 2000, the SEHO issued a stay put order requiring that the Las Virgenes Unified School District "reimburse [John and Barbara Kutasi] for applied behavioral therapy services" pursuant to an agreement between the parties. Taking the Kutasis' allegation as true — and we have no reason to doubt its accuracy — we must conclude that SEHO

could again order the School District to reimburse the Kutasis for all outstanding invoices.

[11] Because the Kutasis allege injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies, the district court's dismissal of their complaint without prejudice is **AFFIRMED**.