BEA, Circuit Judge,
joined by
SILVERMAN and RAWLINSON, Circuit Judges, concurring in part and dissenting in part:
I respectfully dissent from what the majority calls its “clarification” of the “proper method for resolving IDEA exhaustion cases.” [1] Maj. Op. at 874. Rather than a clarification, I see it as a nullification of the congressionally mandated exhaustion requirement. The majority opinion clashes with the clear language of the IDEA, which requires administrative exhaustion “before the filing of a civil action ... seeking relief that is also available under [the IDEA].” 20 U.S.C. § 1415(1) (emphasis added). The majority’s approach is also inconsistent with the core purposes of IDEA exhaustion: allowing state and local agencies “the exercise of discretion and education expertise,” giving agencies “the first opportunity to correct shortcomings in their educational programs for disabled children,” and allowing “full exploration of technical educational issues.” Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir.1992). Finally, the newly-restricted exhaustion requirement will allow plaintiffs — through gamesmanship and cleverly-crafted pleadings — to subject school districts to civil liability for money damages, without first giving school districts the opportunity to remedy the plaintiffs injuries under the IDEA.
Moreover, in remanding this case to the district court to parse the Paynes’ complaint, the majority ignores the procedural posture of this case. This case comes to us on appeal of the district court’s grant of summary judgment to the school district. The school district presented evidence, in the form of deposition testimony from plaintiff Windy Payne, which proved the Paynes sought relief which was “also available” under the IDEA — thus triggering the IDEA’S exhaustion requirement. 20 U.S.C. § 1415(i). In contrast, the Paynes presented no evidence at all to raise a triable issue of material fact as to whether the relief they sought was not “also available” under the IDEA, nor any evidence at all that recourse to the remedies provided in the IDEA would be futile. A moving party is entitled to summary judgment if the non-moving party fails to present, by *887 affidavits, depositions, answers to interrogatories, or admissions “specific facts showing that there is a genuine issue for trial.” Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). I would not remand to the district court to parse Paynes’ complaint for allegations of facts, evidence of which facts the Paynes themselves did not present in their opposition to summary judgment. This is an appeal from an order under Rule 56 of the Federal Rules of Civil Procedure, not an appeal from a 12(b)(6) order. I would affirm. For these reasons, I dissent.
I.
With respect, the majority opinion begins by misreading the IDEA’S exhaustion provision, codified at 20 U.S.C. § 1415(i). The majority reads § 1415(i) — which requires a plaintiff to exhaust administrative remedies if the plaintiff is “seeking relief that is also available under” the IDEA — to mean that exhaustion is required only if a plaintiff specifically alleges violations of substantive IDEA rights, or their “functional equivalent.” According to the majority, “whether a plaintiff could have sought relief available under the IDEA is irrelevant — what matters is whether the plaintiff actually sought relief available under the IDEA.” Maj. Op. at 875 (emphasis in original). Therefore, according to the majority, courts charged with “determining whether the IDEA requires a plaintiff to exhaust ... should start by looking at a complaint’s prayer for relief and determine whether the relief sought is also available under the IDEA. If it is not, then it is likely that § 1415(i) does not require exhaustion.” Maj. Op. at 875. The majority sees “relief that is available” under the IDEA as restricted to three situations: 1) when a claim is based upon alleged violations of a plaintiffs substantive IDEA right to a Free Appropriate Public Education (FAPE); 2) when a plaintiff seeks an IDEA remedy, or the “functional equivalent of an IDEA remedy under a different law” (for example, when a plaintiff seeks recompense for a private school education under the Americans with Disabilities Act, or explicitly measures its calculation of damages as the cost of academic tutoring or psychological counseling); and 3) when a plaintiff seeks injunctive relief to alter a child’s individualized education program (IEP) or educational placement.[2] Maj. Op. at 875-76.
As an initial matter, the majority’s limited exhaustion requirement is inconsistent with the plain text of § 1415(i). Section 1415(Z) does not state that exhaustion is required only for relief that is premised upon an alleged violation of the plaintiffs substantive IDEA rights, seeks the functional equivalent of an IDEA remedy, or seeks injunctive relief after IDEA remedies have been effected. Rather, § 1415(i) simply and broadly states that exhaustion is required if a plaintiff seeks relief that is “also available” under the IDEA. The IDEA requires public schools to provide disabled students with a “free appropriate public education.” A “free appropriate public education” includes not just “an appropriate pre-school, elementary school, or secondary school education,” but also “related services” which include counseling and psychological services. See 20 USC § 1401(26). Thus, if a disabled student brings suit seeking monetary damages to compensate him for his academic regression or psychological injuries which he claims persist after the completion of a school district’s claimed wrongful act or omission, relief for those injuries is “also available” in kind under the IDEA, be *888 cause the “related services” provided under the IDEA — academic services, psychological counseling and therapy — may cure, alleviate, or mitigate such injuries. In such a case, the plain text of § 1415(Z) requires a plaintiff to exhaust the IDEA’S administrative procedures which may lead to the provision of curative or palliative “related services” before filing a civil suit.
The majority’s skepticism that the “IDEA actually authorizes relief designed to correct the effects of misconduct by the school” is misplaced. Maj. Op. at 880. The majority notes that the IDEA defines “related services” as services which “may be required to assist a child with a disability to benefit from special education ” id. (quoting 20 U.S.C. § 1401(26)(A)), and posits that the IDEA does not require schools to alleviate academic and psychological damage to a child which is caused by the school. Id. But this reading of the IDEA makes little sense. The statute plainly holds that if a child requires “related services” to benefit from special education, those services must be provided. Nothing in the statute requires any inquiry as to why those services are required. Thus, if a child suffers from crippling anxiety at school, and that anxiety must be alleviated before he can learn (or, in the words of the statute, “benefit from special education”), the IDEA plainly requires psychological services be provided. It makes no difference whether that anxiety was caused by the school or whether it was caused by some external factor.
Of course, § 1415(i) does not require IDEA exhaustion for all lawsuits brought by disabled students who allege academic or psychological injuries — only for those lawsuits seeking relief for those injuries which may be cured or alleviated by the “related services” provided through IDEA’S administrative process. As we held in Witte v. Clark County School District, 197 F.3d 1271 (9th Cir.1999), plaintiffs need not exhaust IDEA remedies if they seek damages for “retrospective” psychological injuries. Id. at 1276. For example, had the Paynes sought monetary damages for the claimed past and temporary emotional and psychological trauma D.P. suffered while locked in the isolation room, IDEA exhaustion would not have been required. This is so because when the damages sought are for purely retrospective injuries, relief is not “also available” under the IDEA: no amount of academic or counseling services could possibly alleviate the past, but temporary, fright D.P. might claim he felt inside the isolation room. Neither could IDEA’S “related services” cure or alleviate the pain and suffering D.P. might have suffered in the “isolation room” and for a few days thereafter, had he sprained his ankle while locked inside. As this court held in Witte, the “remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately.” Id. at 1276.
On the other hand, when a plaintiff seeks monetary damages to compensate for the academic and psychological aftereffects of a school district’s wrongful act or omission in the provision of education, relief is necessarily available under the IDEA. Here, for example, intensive individualized tutoring might well have alleviated D.P.’s claimed academic regression. Psychological counseling might also have eliminated the nightmares from which the Paynes contend D.P. suffered as a result of the district’s use of the “isolation room” in which it placed D.P. And relief for such academic regression and nightmares is “also available” under the IDEA if the regression and nightmares are likely to continue.[3] Here — as discussed in further *889 detail below — the Paynes sought damages for the past and ongoing academic and psychological after-effects of D.P.’s claimed mistreatment by the school district. In such cases, the plain text of § 1415(Z) requires a plaintiff to exhaust the IDEA’S administrative procedures before filing a civil suit.[4]
The majority expresses concern that this “muscular” view of § 1415(Z) “penalize^] disabled students for their disability,” Maj. Op. at 881, “preempts] all cases involving the mistreatment of disabled students by a school,” id., and “temporarily shieldfs]” school officials from liability for violations of constitutional and statutory rights. Id. at 875-76. Not at all. First, my reading of § 1415(Z) does not preempt all cases involving disabled students harmed by a school. Contrary to the majority’s assertion, I embrace Witte, which eschews preemption in cases where plaintiffs seek compensation only for physical or retrospective injuries. See Witte, 197 F.3d at 1276. Moreover, any shield imposed by the exhaustion requirement is of very limited duration. Due process complaints under the IDEA must be heard and decided within 45 days. 34 C.F.R. § 300.515(a). And so long as plaintiffs exhaust their IDEA remedies, nothing prevents them from subsequently bringing civil claims based upon violations of constitutional or statutory rights. Thus, § 1415(Z) does not absolve school districts of civil liability for injuries which could not be remedied or palliated by IDEA’S “related services.” Instead, it codifies a recognition that the education of disabled children is a complex endeavor, calling for much individual attention, and that a misjudgment in a child’s IEP — or a mistake in execution of that plan — can result in unexpected academic and psychological injuries. For that reason, in cases where “both the genesis and the manifestations of the problem are educational,” Blanchard v. Morton Sch. Dist., 420 F.3d 918, 921 (9th Cir.2005), § 1415(Z) requires potential plaintiffs first to give school districts the opportunity to correct the effects of their claimed educational mistakes under the IDEA’S administrative process, before recasting claims arising frojn acts or omissions related to educational efforts as violations of constitutional and statutory rights, with compensation sought in money damages. Far from penalizing disabled students, *890 § 1415(£) provides a fast, efficient way to redress such students’ academic and psychological injuries, as an Alternative to civil litigation which may drag on for years.
In contrast, the eviscerated exhaustion requirement articulated by the majority elevates the form of plaintiffs’ pleadings over their substance.[5] Consider, for example, a disabled child who seeks monetary damages because a school district’s implementation of some educational program resulted in a claimed failure adequately to instruct him in reading.[6] Such a child could allege either: 1) the school district failed to provide a “free appropriate public education” as required by the IDEA, 20 U.S.C. § 1401(9), or, as the plaintiffs here claim, 2) the school district’s actions caused the child’s “academic prowess and abilities” to be diminished, entitling the child to general and special damages for his emotional and psychological pain and suffering. Although the facts underlying both of these claims would be identical, the majority holds that the IDEA requires exhaustion of administrative remedies only if the plaintiff styles his complaint as a failure to provide a “free appropriate public education” under the IDEA, or explicitly measures damages as the cost of counseling, tutoring, or private schooling. Only then, according to the majority, is the claim based upon “either the IDEA ... or its substantive standards.” See Maj. Op. at 875. The majority opinion thus effectively serves as a roadmap for plaintiffs who wish to avoid § 1415(£)’s exhaustion requirement and any curative or palliative services the school district could offer to eliminate or reduce damages, but would rather obtain a money award in a federal court. So long as a complaint which seeks monetary damages does not mention a specific provision of the IDEA, demand a remedy specifically provided by it, or seek injunctive relief to modify an implemented IEP, the majority holds there is no need to exhaust administrative remedies which could remedy the harm done to a disabled child through the school’s mistakes in implementing the child’s education. Thus, the majority largely nullifies § 1415(Z) by providing plaintiffs with an easy end-run around the exhaustion requirement. It does not take a crystal ball to foresee the result. Would a plaintiffs attorney rather 1) state a claim for the provision of in-kind services under the IDEA, and if success *891 ful, be paid in court-supervised attorney’ fees, see 20 U.S.C. § 1415(i)(3)(B), or 2) seek monetary damages under a contingent fee contract with the parents?
The majority incorrectly insists that our previous “injury-centered” approach to exhaustion was inconsistent with § 1415(i )’s requirement that plaintiffs exhaust administrative remedies if a plaintiff is “seeking relief that is also available under [the IDEA].” 20 U.S.C. § 1415(0 (emphasis added). According to the majority, the phrase “seeking relief’ suggests that “whether a plaintiff could have sought relief available under the IDEA is irrelevant — what matters is whether the plaintiff actually sought relief available under the IDEA.” Maj. Op. at 875 (emphasis in original). But this interpretation of the phrase “seeking relief’ is inconsistent with this court’s prior determination that a plaintiff cannot circumvent the IDEA’S exhaustion requirement by seeking only monetary damages. Robb, 308 F.3d 1047 at 1050. Although monetary damages are not ordinarily available under the IDEA, we have joined at least five sister circuits to hold that a prayer for monetary damages does not automatically excuse the IDEA’S exhaustion requirement. Id.; see also Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 64 (1st Cir.2002); Covington v. Knox County Sch. Sys., 205 F.3d 912, 916 (6th Cir.2000); Padilla v. Sch. Dist. No. 1 in the City and County of Denver, Colo., 233 F.3d 1268, 1274 (10th Cir.2000); Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 993 (7th Cir.1996); N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1379 (11th Cir.1996). Thus — because a plaintiff who includes an education-related prayer for monetary damages necessarily does not “actually” seek relief available under the IDEA — we, and our sister circuits, have held that what “matters” for exhaustion purposes is precisely whether a plaintiff “could have” sought relief for the claimed injuries, which relief is also available under the IDEA through in-kind services. The majority opinion does not overturn this aspect of our IDEA jurisprudence;[7] this leaves us with a puzzling inconsistency. On the one hand, as the majority holds today, the phrase “seeking relief’ requires courts to look solely at what form of relief the plaintiff “actually sought.” On the other hand, courts will look necessarily to what sort of relief a plaintiff “could have” sought in complaints which seek damages measured in the cost of services available in-kind under the IDEA, or which seek monetary damages for claims which are explicitly based upon alleged violations of a plaintiffs substantive IDEA rights,[8] Maj. Op. at 875-76, 876-77.
*892 Finally, the majority opinion undermines the sound principles behind the exhaustion requirement. We have previously held that the IDEA’S exhaustion requirement “recognizes the traditionally strong state and local interest in education, allows for the exercise of discretion and educational expertise by state agencies, affords full exploration of technical educational issues, furthers development of a factual record and promotes judicial efficiency by giving state and local agencies the first opportunity to correct shortcomings.” Kutasi v. Las Virgenes Unified Sch. Dist., 494 F.3d 1162, 1167 (9th Cir.2007). In addition, because due process complaints under the IDEA must be heard and decided within 45 days, 34 C.F.R. § 300.515(a), the IDEA’S expedited timetable encourages quick and efficient resolution of disputes. Yet the majority’s curtailment of the exhaustion requirement promotes none of these goals. On the contrary, the weakened exhaustion requirement will bode to flood federal courts with IDEA cases, before a local agency has had an opportunity to resolve the dispute. Federal judges and juries — not education experts — -will be asked to serve as “ersatz school administrators,” Maj. Op. at 876, and make determinations about what money damage awards are necessary to prevent or alleviate academic, psychological, or emotional harm. And disabled children whose academic and psychological injuries might have been quickly cured or mitigated by in-kind services supplied by a school district under the IDEA may have to wait until the resolution of a potentially lengthy civil lawsuit to receive a monetary balm.
II.
Recognizing, perhaps, that its reading § 1415(Z) could financially burden school districts by requiring them to reimburse plaintiffs for palliative services the school districts could have cost-effectively provided in-kind, the majority rewrites § 1415(0 — an exhaustion statute — as a mitigation statute. The majority concludes that after a court determines exhaustion was not required, a defendant subsequently should “be permitted to provide evidence showing that the relief being sought by that plaintiff was, in fact, available under the IDEA” and “withhold [remedies] that are unexhausted and available under the IDEA.”[9] Maj. Op. at 882. I am puzzled as to how the majority can so interpret § 1415(i). Section 1415(i) is not a “collateral source” doctrine which would permit defendant school districts to submit evidence proving a plaintiffs monetary damages would have been reduced had plaintiffs availed themselves of remedies *893 also available under the IDEA. It is thus distinguishable from, for example, the collateral source provision of California’s Medical Injury Compensation Reform Act (MICRA), Cal. Civ.Code § 3333.1. MI-CRA permits health care providers who are sued for personal injuries allegedly caused by medical malpractice to mitigate damages by “introducing] evidence of any amount payable to the plaintiff as a result of the personal injury” from outside sources, including the Social Security Act, worker’s compensation schemes, and private insurance plans. Cal. Civ.Code § 3333.1(a). In contrast, § 1415(2) does not provide for the introduction of mitigating evidence at a hearing to assess damages. To the contrary, § 1415(2) very clearly states:
“before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [administrative] procedures ... shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].”
20 U.S.C. § 1415(2) (emphasis added).
The majority’s attempt to turn § 1415(2) into a mitigation statute is thus belied by the plain text of the law. If the defendant is permitted at trial to “provide evidence showing that the relief being sought by that plaintiff was, in fact, available under the IDEA,” Maj. Op. at 882, then such evidence was “also available” before the action was filed. After all, evidence that the school district could have provided palliative academic or psychological services under the IDEA is relevant — for mitigation purposes — only if those services could have reduced plaintiffs’ damages. To reduce plaintiffs’ damages, such services must have been “also available” to the plaintiff. And if relief is “also available” to a plaintiff under the IDEA, § 1415(2) requires a plaintiff to exhaust his remedies under the IDEA “before the filing of a civil action.” 20 U.S.C. § 1415(2) (emphasis added). There is not a word in § 1415(2) about mitigation, nor anything which permits a school district to introduce evidence that relief was “also available” under the IDEA at trial for the purpose of reducing a monetary award to plaintiffs at trial.
Indeed, contrary to the majority’s conclusions, Section 1415(2) creates a system quite different from a common-law system of mitigation. Were common-law mitigation to apply, the trier-of fact would determine what palliative academic or psychological expenses — if any — could have been avoided by using the school district’s “also available” services, and reduce damages accordingly. But § 1415(2) does not leave that determination to the trier-of-fact at trial. Instead, § 1415(2) requires those “also available” services to have been solicited, attempted, and used before any reimbursement is sought. The purpose of § 1415(2) is to have the “also available” public services actually used, outside the courtroom, to produce their practical effect on the disabled child. Section 1415(2) does not provide for the monetary value of unused services to be determined as a hypothetical, debated in the courtroom.
Thus, contrary to the majority’s conclusion, § 1415(2) does not require a defendant school district to introduce evidence of how the in-kind services plaintiffs chose not to pursue could have mitigated a plaintiffs injuries. Instead, in enacting § 1415(2), Congress was exceedingly clear: plaintiffs must actually exhaust IDEA remedies before bringing a suit for which relief is “also available” under the IDEA.
III.
In light of its newly-articulated, restricted exhaustion requirement, the majority remands this case for the district court to determine which “constitutional” claims in the Paynes’ complaint need not be exhausted. But the majority’s narrow focus *894 on the Paynes’ complaint overlooks the fact that this case is an appeal from a grant of summary judgment, and that all of the facts presented to the district court indicated the Paynes were seeking at least some relief that was “also available” under the IDEA — even under the majority’s narrow reading of the phrase. Because the school district presented evidence (mainly in the form of plaintiff adverse-party Windy Payne’s deposition) that the Paynes sought relief that was “also available” under the IDEA — and because the Paynes presented no evidence to the contrary— the school district was entitled to summary judgment as a matter of law. See Celotex, 477 U.S. at 324, 106 S.Ct. 2548 (on a motion for summary judgment, non-moving party must “designate specific facts showing that there is a genuine issue for trial”) (quoting Fed.R.Civ.P. 56(e)).
In its motion for summary judgment, the school district properly raised an affirmative defense which contended the Paynes’ lawsuit should be dismissed because the Paynes sought relief that was “also available” under the IDEA and had not exhausted their administrative remedies.[10] In support of its motion for summary judgment, the school district produced a July 21, 2006 deposition of D.P.’s mother, Windy Payne, in which she testified the Paynes were seeking monetary relief for D.P. not for the retrospective temporary emotional trauma D.P. experienced while in the isolation room, but for 1) the expenses of private doctors and therapists who had treated D.P. to right the wrongs done him by use of the isolation room, and 2) for treatment and cure of past and ongoing academic, psychological, and emotional difficulties caused by use of the isolation room. Windy Payne testified that she sought damages for the “lack of [D.P.’s] education,” the “emotional trauma that [D.P.] and I have suffered, and the impact that it has had on our lives and continues to have.” (emphasis added). She stated that the damages sought were for everything D.P.’s parents had done— including provision of private doctors and therapists to make him a “happy boy again.” Part of the measure for those damages, according to Windy Payne, was the out-of-pocket expenses the Paynes had paid “for lots of doctors and lots of therapy”
In other words, Windy Payne’s deposition established that the Paynes sought money damages for the past and ongoing academic and psychological aftereffects of the school district’s use of the isolation room. Windy Payne testified the Paynes sought damages: 1) to compensate D.P. and his parents for the emotional trauma that required the Paynes to seek professional psychological services (the private doctors and therapists) and, 2) to provide treatment and services for D.P.’s ongoing academic, emotional, and psychological injuries, and the parents’ continued emotional trauma which derived from those injuries. Relief from the academic and psychological aftereffects of the school district’s use of the isolation room was “also available” under the IDEA. The school district could have provided — under the “related services” provision of the *895 IDEA, 20 U.S.C. § 1401(26) — the past psychological counseling the Paynes purchased for D.P. on the private market. And the school district can now provide ongoing academic and psychological services to alleviate the damage done to D.P. in the isolation room. Thus, unlike the plaintiffs in Witte, 197 F.3d at 1276, Windy Payne’s testimony establishes that the Paynes were not seeking only retrospective damages for injuries that the IDEA could not palliate. Windy Payne did not, for example, testify that she sought monetary compensation for the fright D.P. felt while locked in the isolation room — a completed retrospective injury no in-kind academic or psychological services could have remedied. Nor did Windy Payne testify that she sought compensation for some physical injuries which resulted from the school district’s use of the isolation room. Instead, Windy Payne’s testimony establishes the Paynes sought monetary compensation for the academic and psychological aftereffects of the school district’s use of the isolation room — which aftereffects could have been remediated or palliated by the in-kind services specified in the IDEA.
Moreover, the Paynes’ complaint itself supports the school district’s contention— and the district court’s determination on summary judgment — that the Paynes sought only relief which had been and is “also available” in-kind, under the IDEA.[11] The Paynes’ complaint specifically alleged the following injuries were sustained by their son as a result of his mistreatment: “significant regression in communicative and sensory functions,” diminished “academic prowess and abilities,” and “continue[d] ... signs of emotional trauma.” (emphasis added). The complaint further sought “general damages for extreme mental suffering and emotional distress and special damages in an amount to be proven at trial.” There was nothing in the complaint to indicate the Paynes sought damages for anything other than the past and ongoing academic and psychological aftereffects of D.P.’s time in the isolation room, and the derivative trauma his parents experienced as a result.[12]
In opposition to the school district’s motion for summary judgment — and the evidence adduced by the school district in its moving papers — the Paynes produced no *896 declarations, affidavits, depositions, or other discovery material to attempt to prove they sought relief for anything other than the past and ongoing aftereffects of D.P.’s academic, emotional, and psychological injuries arising from the claimed education-related mistreatment. Indeed, the Paynes did not even contend they sought damages for injuries that could not be redressed in kind under the IDEA. Instead, the Paynes relied solely on a since-overruled Third Circuit case which held that an IDEA claim need not be exhausted if it seeks monetary damages,[13] see W.B. v. Matulo, 67 F.3d 484, 496 (3d Cir.1995)-a theory this court has squarely rejected, and continues (at least in form) to reject. Robb, 308 F.3d 1047 at 1050; see Maj. Op. at 876-77.
In addition, the Paynes contended IDEA exhaustion would be futile, because they were not seeking any changes to D.P.’s IEP, and because they did not raise any claim which sounded specifically in the IDEA. But the Paynes had the burden of proof to prove the futility or inadequacy of IDEA procedures, Doe v. Arizona Dep’t of Educ., 111 F.3d 678, 681 (9th Cir.1997), and the Paynes presented no evidence to prove it would have been futile for them to pursue the academic and counseling services the school district was required to provide, or that such services would have been useless to D.P. Indeed, Windy Payne’s own deposition testimony — in which she stated that the family had taken D.P. to therapists to alleviate his psychological injuries — suggests that D.P.’s injuries were at least partially remedied by in-kind counseling services; counseling services which, for aught that appears, the district was perfectly capable of providing through IDEA, had the Paynes pursued the administrative remedies provided under Sec. 1415(f) and (g).
Thus, all of the evidence before the district court on the motion for summary judgment showed that relief for what the record evidence proved were D.P.’s injuries was “also available” in kind under the IDEA, and there was no proof — none at all — that seeking relief through the administrative process would have been futile. The school district could have remedied or mitigated D.P.’s injuries through tutoring, counseling, or other educational or psychological remedies, much as Windy Payne testified her doctors and therapists did in returning D.P. to being “a happy boy again.” And if D.P.’s underlying injuries — at least some of them — could have been remedied or mitigated through the IDEA’S administrative process’s provision of services, so too could the pain and suffering arising from those injuries for which his parents now seek recompense.[14]
*897 IV.
Before bringing this suit in federal court — and sparking this protracted litigation which has now dragged on for six years — the Paynes should first have exhausted their administrative remedies and sought relief that was “also available” under the IDEA, as required by the plain text of § 1415(2). Indeed, even under the majority’s narrow reading of § 1415(2), the evidence submitted by the parties supported the district court’s grant of summary judgment to the school district. The majority holds that “[i]f the measure of a plaintiff’s damages is the cost of counseling, tutoring, or private schooling — relief available under the IDEA — then the IDEA requires exhaustion.” Maj. Op. at 877. Here, Windy Payne has explicitly stated in her deposition that she sought reimbursement for the cost of the counseling and psychological services needed to make D.P. a “happy boy again.” The Paynes submitted no evidence to suggest this was not a measure of the damages they sought. Thus, even under the majority’s newly-articulated exhaustion requirement, the district court’s grant of summary judgment should be affirmed.[15]
Therefore, I would affirm the district court’s grant of summary judgment to the school district in its entirety.

. In light of Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), and Reed Elsevier, Inc. v. Muchnick,-U.S.-, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010), I concur in the majority's determination that the IDEA’S exhaustion requirement is non-jurisdictional. I note, however, that it was unnecessary to reach the jurisdictional issue in this case. Here, defendants raised Payne's failure to exhaust administrative remedies as an affirmative defense in the district court. Therefore — regardless whether the IDEA'S exhaustion requirement is jurisdictional or must be raised as an affirmative defense — it is clear that the exhaustion issue in this case was properly before the district court. Because this court did reach the jurisdictional question, however, I concur in its analysis of the issue.

. An IEP is a document which sets educational goals and specifies an instructional plan for disabled students. 34 C.F.R. § 300.320. An IEP must be reviewed and renewed at least annually. Id.

. Plaintiffs can also avoid the IDEA'S exhaustion requirement if they can prove that recourse to the IDEA's administrative proce *889 dures would have been futile or inadequate. For example, parents who seek monetary damages as compensation for the out-of-pocket expenses they paid for a specialized form of private tutoring or private psychological counseling could avoid the IDEA'S exhaustion requirement if they prove that such tutoring or counseling was 1) necessary, and 2) could not have been provided by the school district. The party alleging futility of IDEA procedures bears the burden of proving its futility. Doe v. Arizona Dep't of Educ., 111 F.3d 678, 681 (9th Cir.1997). This exception to the exhaustion requirement does not apply to the Paynes, as they presented no evidence of futility; of course, neither did the school district. See infra at pages 893-94.

. The majority contends this plain reading of § 1415(Z) is somehow inconsistent with Witte, because the court in Witte could have speculated that the child — who alleged only retrospective physical injuries — also could have alleged ongoing psychological harm. See Maj. Op. at 880-81. This is wrong: § 1415(1) requires exhaustion only when a plaintiff is “seeking relief that is also available under [the IDEA].” 20 U.S.C. § 1415(Z) (emphasis added). If, as in Witte, a plaintiff does not allege academic or psychological injuries — and thus is not seeking academic or psychological relief— § 1415(Z) obviously does not permit a court to invent such injuries for the plaintiff. Here, per the plaintiff’s own complaint and deposition testimony, the only relief sought was academic and psychological relief which is “also available under the IDEA.” I would hold that exhaustion is required only where academic or "related services” could correct the injuries claimed by the plaintiff, not where such services could also correct injuries which are purely conjectural.

. As discussed in greater detail below at pages 887-88, for the majority to thus frame the issue was especially incorrect here, since the issue here does not involve the adequacy of the plaintiffs' pleadings, but the adequacy of the evidence adduced by the parties to establish or eliminate triable issues of material fact. The district court entertained and ruled on a Rule 56 motion, not a Rule 12(b)(6) motion.

. The majority contends that "a claim for failure to adequately instruct a student in reading can arise only under the IDEA because there is no other federal cause of action for such a claim.” Maj. Op. at 880. With respect, the majority underestimates the potential creativity of plaintiffs' attorneys. Consider, for example, a child whose IEP provides that he should spend 30 minutes each school day reading independently in a quiet room by himself. If that child were to suffer anxiety and claustrophobia while in the quiet room — leading to a regression in his reading scores — he might sue the school district under § 1983 for improper detention in violation of the Fourth Amendment and seek compensation for his academic injuries. Indeed, such a case would be largely analogous to the facts in Robb v. Bethel School District # 403, 308 F.3d 1047 (9th Cir.2002), in which the plaintiff sought monetary damages for academic injuries which resulted from a child's participation in “peer tutoring” sessions which took place on the floor of a dimly-lit hallway. As I read the majority, so long as an alleged violation is cast as a federal Constitutional or statutory claim, the plaintiffs are not required to exhaust their administrative remedies — regardless whether the claim is actually based upon the school district's failure adequately to instruct the child.

. The majority holds that a plaintiffs prayer for monetary damages does not automatically excuse the IDEA’S exhaustion requirement. For example, if "the measure of a plaintiff’s [monetary] damages is the cost of counseling, tutoring, or private schooling — relief available under the IDEA — then the IDEA requires exhaustion.” Maj. Op. at 877. The majority holds the exhaustion requirement also applies if a plaintiff “seeks damages to fund a private education (without mentioning the IDEA).” Id. Because such claims explicitly seek the "functional equivalent” of an IDEA remedy, the majority holds relief is "also available" under the IDEA. I agree the exhaustion requirement applies in such cases; I do not, however, read § 1415(1) so narrowly.

. Consider, for example, one situation in which the majority holds that "exhaustion is clearly required”: where a plaintiff files a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a plaintiff's IDEA rights. See Maj. Op. at 875-76. If such a claim seeks only monetary damages, the plaintiff has not "actually sought relief available under the IDEA,” because the IDEA does not provide for monetary damages. But in such a case, the majority (rightly) requires exhaustion, because the substantive rights at issue are clearly premised on the IDEA — and could have been resolved using the IDEA’s administrative procedures. In that situation, the phrase "seeking relief” does not bar courts from *892 looking to whether the plaintiff "could have” sought relief available under the IDEA. I am puzzled as to how the majority concludes that the same phrase bars courts from looking to whether a plaintiff "could have” sought in-kind relief under the IDEA where, as here, the plaintiffs claim only academic and psychological injuries which, at least as to future academic and psychological injuries, could be eliminated, attenuated, or mitigated by IDEA-provided "related services.” Such "related services” are indeed similar to those which plaintiff Windy Payne testified had been effective to return her son to being a "happy boy.” See infra at 892-93 for further discussion.

. Judge Callahan makes a nearly identical point in her concurrence, concluding that "the dismissal of an ambiguous complaint or cause of action for failure to exhaust ... may be complemented by allowing a defendant school district to assert, even at trial, that an aspect of plaintiff's claim of damages would have been addressed in the administrative proceedings. Then, to the extent that the defendant meets its burden of demonstrating that the administrative processes would have addressed an aspect of the alleged damages, plaintiff would be denied any recovery for that aspect because that portion of his claim is unexhausted.” Callahan Concurrence at 884.

. The school district's motion for summary judgment conceded that had the Paynes sought retrospective relief for the school district’s alleged Constitutional violations, the Paynes' failure to exhaust "would not be fatal” under Witte v. Clark County School District, 197 F.3d 1271, 1276 (9th Cir.1999). For example, had the Paynes sought monetary damages to recompense D.P. for the past and temporary emotional trauma he experienced while locked inside the safe room, exhaustion would not have been required, because the academic and psychological in-kind services provided for by the IDEA cannot remedy such past injuries, any more than they could remedy the pain and suffering from the hypothetical now-cured sprained ankle earlier mentioned.

. In its motion for summary judgment, the school district did not quote the portions of the Paynes' complaint which dealt with D.P.'s injuries or which put forward a prayer for relief. However, the district court explicitly considered the language of the complaint in its order granting the school district’s motion for summary judgment. The district court was within its discretion to do so: Federal Rule of Civil Procedure 56(c)(l)(3) provides that in considering a motion for summary judgment, a district court “need consider only the cited materials, but it may consider other materials in the record.” The Paynes’ complaint was admissible in evidence as the admission of a party litigant. Fed.R.Evid. 801(d)(2). Its allegations of fact supported the school district's motion for summary judgment, because the Paynes' complaint supported the school district’s contention that the Paynes sought only relief which was also available under the IDEA.

. Moreover, even had the allegations in the complaint stated that the Paynes sought relief for something other than the academic and psychological aftereffects of D.P.’s time in the isolation room, those allegations would be trumped by Windy Payne's deposition testimony to the contrary. On a motion for summary judgment, depositions of a party trump the allegations of his or her complaint. See Fed.R.Civ.P. 56(c)(1)(A); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (nonmoving party cannot avoid summary judgment by relying solely on allegations that are unsupported by factual data); Dismore v. Aetna Casualty & Surety Co., 338 F.2d 568, 571 (7th Cir.1964) (“allegations of the complaint are not controlling where controverted by depositions”). Thus, on motion for summary judgment, the unverified complaint can provide only factual evidence — admissions—against plaintiffs; never for plaintiffs.

. The majority correctly notes that the Third Circuit case on which the Paynes relied has been overruled by A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir.2007), and that every other circuit to address the issue has held that limiting requested relief to damages alone is not enough to avoid the exhaustion requirement of the IDEA. See Maj. Op. at 873 n. 3.

. The majority opaquely suggests that exhaustion in this case would be required if the Paynes' "emotional distress stem[med] from Payne's concern that D.P. was not receiving an adequate education.” Maj. Op. at 883. However, the majority further holds that exhaustion is not required if the Paynes’ "emotional distress” stemmed from "injuries resulting from Fourth or Eighth Amendment violations committed by school officials.” Id. Here, the only injuries alleged with reference to facts — which factual allegations are proof against the plaintiff per Federal Rule of Evidence 801(d)(2) — by D.P. resulting from Fourth or Eighth Amendment violations were academic and psychological injuries, which could have been redressed under the IDEA. The difficulty — if not impossibility — of distinguishing between "concern that a child was not receiving an adequate education” on the one hand, and concern over academic “injuries resulting from Fourth or Eighth Amend *897 ment violations” on the other, is a further reason I favor our previous exhaustion approach to the one articulated by the majority. The concrete claims of injury carry greater weight, in making decisions, than do abstract claims of constitutional violations.

. Under § 1415(1), the district court could not simply hold that some measures of damages must be exhausted and some measures need not be, such that any final award of damages would be reduced by the unexhausted amount. Section 1415(1) specifically provides that IDEA exhaustion is required "before the filing of a civil action." Thus, § 1415(1) serves as an absolute bar to lawsuits which seek any relief that is "also available” under the IDEA. Section 1415(1) is not a cap on damages, and does not, by its terms, permit a court selectively to exclude recovery for any injury or harm that would have been covered by the administrative proceedings under the IDEA. If there are any claims for relief made as to which no triable issue of fact exists but that the relief is "also available” under the IDEA, the complaint must be dismissed as having been prematurely filed before the required administrative exhaustion.